Frank J. Kronenberg, S.
The question in this proceeding is whether assets of the decedent which were transferred by his guardian to the I. O. O. F. Home may be reclaimed by his estate upon the ground that the transfer was invalid.
*134 The decedent, after residing in Buffalo most of his life, emigrated to Florida. In 1953, while in his eighties, his health became poor. The Orange County Court of Florida adjudged him incompetent and appointed a guardian of his person and estate. The decedent tried living in nursing homes in Florida, but found them unsatisfactory and requested of his guardian that arrangements be made for him to become a resident of the I. O. 0. F. Home at Lockport, New York. Application was duly made and he was accepted for residence at the home. The guardian then applied to the Orange County Court for permission to transfer the incompetent’s domicile from Florida to New York. Such permission was granted, pursuant to section 744.10 of the Florida Statutes (L. 1945, ch. 22750, § 1), and the decedent moved to and took up residence in the I. O. O. F. Home at Lockport. No one questions the propriety of the order of the Florida court permitting the change of domicile, and indeed such order was in accord with customary practice. (Matter of Sariyanis, 173 Misc. 881.)
At the time of the application for admission to the home, the decedent’s guardian was possessed of certain bank accounts, and the rules for admission required that the bank accounts be transferred to the I. 0. O. F. Home, and the guardian subsequently made such transfer in the amount of $3,529.92.
The order for change of domicile made by the Orange County Judge made no mention of any transfer of assets, but did authorize the guardian to “ do all things necessary to transfer said incompetent from the State of Florida to the State of New York ”. However, said general language does not seem sufficient authority for the transfer of assets made by the guardian.
After taking up residence in the home at Lockport, the decedent petitioned the Supreme Court in Niagara County to declare that he had become competent again, and such order was granted April 6,1955. There can be no serious question as to the power of the Supreme Court to make such order. Incompetency is not necessarily permanent, and when it comes to an end the courts of the State in which the incompetent then has his domicile may properly find that he has recovered and, because the finding is based on a change in circumstances, it in no way reflects on the propriety of the earlier order adjudging in competency. (Matter of Kassler, 173 Misc. 856.)
Decedent continued to remain at the home until his death on April 30, 1955. In January, 1955, the decedent personally executed the agreement for transfer of assets which had previously been executed by his guardian.
*135 Subsequent to the death, the guardian, apparently realizing the infirmity of his transfer of assets, petitioned the Orange County Court for an order approving and ratifying the transfer of the assets and such order was granted. However, this was after the decedent’s death, and it appears that said order was granted without notice to the administratrix or other interested persons. Consequently, it seems doubtful whether said order of ratification can be given effect, but the court finds it unnecessary to pass on this question.
It should be emphasized that the decedent, while still legally incompetent, executed the transfer agreement in January, 1955, and that previously thereto his guardian had executed the agreement on his behalf.
The execution of the agreement in January, 1955, by the decedent was void, because he was under an adjudication of incompetency. (Carter v. Beckwith, 128 N. Y. 312.) However, the decedent, after being adjudged competent on April 6, 1955, was free to make any contract that he desired. ‘ ‘ It was argued that this is not binding upon the plaintiff, because at the time the promise was made she was declared incompetent, and being so could not make a binding contract. It is true that the contract of a lunatic, after office found, is void. * * * But after adjudicated to be competent, a contract theretofore made may be ratified by making a new one containing the same terms and conditions, or by ratifying the old one — the contract taking-effect as of the date of the ratification.” (Lawrence v. Morris, 167 App. Div. 186, 193.)
The concept of ratification of a void contract may seem anomalous and, in truth, it appears to be a less than felicitous phrasing of the rationale of the matter. The true meaning of the Lawrence case appears to be that the former incompetent makes a new contract which embodies the same terms as the old void transaction.
Furthermore, the decedent, after regaining competency, was free to ratify the action of his guardian in agreeing to transfer the assets.
“ The defendants argue that the deed from the committee, Vellum, reconveying the farm to Woodward was unauthorized and wholly void. But the transaction was not criminal or corrupt or opposed to public policy. * * * The deed, therefore, was not void in the sense that it could not be adopted and ratified by the incompetent if he recovered his understanding. It was void because it was beyond the power of Vellum to make it.
*136 "The law is that where one person, without any authority whatsoever, undertakes to deal with the property of another person, such other person on learning the facts of the case may at pleasure, either adopt and ratify or repudiate what has been done.” (Newton v. Evers, 215 N. Y. 198, 204.)
Thus we are brought to the question of whether decedent’s conduct in continuing to reside at the I. O. O. F. Home from the date he was adjudicated competent, April 6,1955, to the date of his death, April 30, 1955, constitutes ratification of the guardian’s entering into the agreement for transfer of assets; or to look at it from a different angle, whether decedent’s conduct created a new contract containing the same terms as that transfer agreement decedent had signed in January, 1955 and which his guardian had earlier signed.
The legal principles governing the relation of principal and agent are relevant to our discussion, since the guardian was in effect a court-appointed agent of decedent, and also purported to act on decedent’s behalf. “ One may ratify the acts of another purporting to be made on his behalf whether that other is an agent exceeding his authority or no agent at all.” (Ramsay v. Miller, 202 N. Y. 72, 75-76.)
Whether there was ratification is a conclusion of fact, and not a conclusion of law. (Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 131.) Ratification may consist of acquiescence instead of positive and distinct action or language. (Walker v. Man, 142 Misc. 277.) Enjoyment by the principal of the benefits of the bargain made by the agent is a strong indication of ratification. (Reitz v. Krystofowicz, 166 Misc. 814.)
There can, of course, be no ratification without knowledge or notice of the facts. (Corrigan v. Bobbs-Merrill Co., 228 N. Y. 58, 70); but “ the facts will be liberally construed in favor of a ratification by the principal of the acts of the agent, and very slight circumstances and small matters will sometimes suffice to raise the presumption of ratification ”. (Anderson v. Wood Dolson Co., 212 App. Div., 483, 487.)
Here, decedent, being competent on and after April 6, 1955, continued to reside at the I. O. O. F. Home. In so doing, he acquiesced in and accepted the benefit of the contract which his guardian had previously made for him. Since decedent was competent after April 6, it must be assumed that he knew where he was residing and the terms of his residence. There is no evidence that the terms of the agreement relating to transfer of his assets was specifically called to his attention after April 6. The following facts have been stipulated: “ That if various members of the nursing staff at the Odd Fellows Home in Lock- *137 port, New York were called to testify, they would testify that the deceased was alert, lucid and in general knew what he was doing, where he was and why he was at the home.”
It was further stipulated that two psychiatrists and the attending physician for the home examined decedent in January, 1955, and all agreed that he was well oriented, had good memory, was alert and of sound understanding.
Under these circumstances, the court finds no difficulty in determining that decedent on and after April 6 remembered what he had signed in January and what his guardian had signed for him; decedent voluntarily and knowingly ratified the agreement. The ratification was expressed by his continued residence after becoming competent and there was full knowledge of the facts by decedent.
Death ended his residence only 24 days after he had become legally competent. The court feels that such period was ample to effect ratification in this case, especially since there is no evidence that before or after April 6 decedent expressed any dissatisfaction with living at the home or gave any indication of a desire to leave or to repudiate the agreement.
By the same token, decedent is deemed to have ratified his execution of the agreement in January, as the term “ ratify ” is used in the Lawrence case (167 App. Div. 186, supra). There is implied ratification 1 ‘ when the conduct of a plaintiff, relating to the transaction or matter complained of by him, subsequent to the rise of it, justifies and supports the normal and reasonable conclusion that he, by his assent thereto or acquiescence therein, has accepted and adopted it.” (Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 129, supra.) Conduct which would be sufficient to imply ratification may likewise be enough to constitute acceptance of an offer, resulting in a binding contract. “ The concurrence of the minds of the parties upon a proposition by one, manifested by an overt act of the other, makes a contract. United Merchants Realty & Improvement Co. v. Roth, 193 N. Y. 570, 581 * * *; Dent v. North American Steamship Co., 49 N. Y. 390. Unquestionably, acceptance may be indicated by conduct or acquiescence, Barber-Greene Co., Inc. v. M. F. Dollard, Jr., Inc., 239 App. Div. 655, 269 N. Y. S. 211, affirmed 267 N. Y. 545 ”. (Joseph v. Atlantic Basin Iron Works, 132 N. Y. S. 2d 671, affd. 285 App. Div. 1147.)
The conclusion here is the same whether the court considers the question: Did the decedent by his conduct after April 6 ratify his guardian’s act?, or the question: Did decedent by his conduct after April 6 enter into a contract with the home on the same terms as the purported contract made by the guardian?
*138 It is of no moment that the guardian did not actually pay the funds to the home until February, 1956. The question is whether the guardian was obligated to pay. If he was, and the court so decides, the payment was proper whenever made. Had he not been obligated, payment would never have been legal.
Submit decree dismissing the administratrix’ claim.