Louis D. Laurino, S.
In this contested accounting proceeding, the objectors move to file amended objections based on information discovered at the pretrial examinations. From the pleadings and moving papers the court gleans the following allegations, all of which are subject, of course, to proof on the trial.
The decedent, Margaret Berry, was admitted to the hospital in February, 1970. On March 26, 1970 she executed a power of attorney designating her niece, Irene Montanye, as her agent. Thereafter the decedent was discharged from the hospital. On April 29, 1970 the decedent suffered “a cerebral accident” (apparently a euphemism for apoplexy or a stroke) and was readmitted to the hospital. She remained in a comatose or semi-comatose condition until her death on June 30, 1970. On April 30 Mrs. Montanye, acting under the power of attorney, transferred some $109,000 of the decedent’s funds into a Totten Trust account in the name of thp decedent in trust for Anne B. Scully. Mrs. Scully is the mother of Mrs. Montanye and the sister of the decedent. She is the administratrix of this estate.
*398 The thrust of the original objections filed by the other distributees of the decedent and their assignees was that the alleged agency created by the power of attorney was void because the decedent did not understand what she was doing and that the transfer of the funds to the Totten Trust was void as being beyond the scope of any agency created.
Having examined the hospital records and the decedent’s physician, the objectors move to amend their objections to include one to the effect that the transfer of the funds was void because at the time of the transfer and thereafter the decedent was mentally incompetent by reason of being in a comatose or semicomatose state and, therefore, the agency was suspended or revoked. The attorney for the administratrix opposes the amendment of the objections on the grounds that at law the objection raises no triable fact. He contends that a revocation of the power of attorney could only be accomplished by an act of the principal, or an agreement between the principal and agent, or by operation of law. He limits operation of law, as far as it is applicable in this matter, to the death of the principal or to a judicial declaration of the incompetency of the principal.
This court disagrees. Section 122 of the Restatement of the Law of Agency states: ‘ ‘ The authority of the agent to make the principal a party to a transaction is terminated or suspended upon the happening of an event which deprives the principal of capacity to become a party to the transaction or deprives the agent of capacity to make the principal a party to it.”
The Comment (a) thereupon reads in part: “ The principal may cease to have capacity to make a contract or to subject himself to liability because of mental incompetency, as where there is a judicial determination of his insanity ”.
Comment (b) reads: “ The power of the agent terminates although he has no notice of the principal’s loss of capacity or of the event causing it. It also terminates although the contingency has been provided for and it has been agreed that the authority would not thereupon terminate. ’ ’
Corpus Juris Secundum (Yol. 2, Agency, § 88) states:
“ (1) General Rule
‘ ‘ An agency is ordinarily terminated as a matter of law by the insanity of the principal.
“ Because the principal is said at all times to have a right of supervision over the agency, his insanity or mental incapacity before performance by the agent of his duties ordinarily terminates the agency as a matter of law, and the lunacy or mental incapacity of the principal will have this effect whether or not . he has in fact been adjudged insane ’ ’.
*399 Although there appears to he no reported case in New York holding that a “ cerebral accident” causing the principal to enter and remain in a comatose or semicomatose state is a state of mental incapacity sufficient to void the agency relationship, Chief Justice Vanderbilt of the New Jersey Supreme Court, quoting the Restatement of the Law of Agency, so held in Foster v. Reiss (18 N. J. 41). In that matter, the decedent, Mrs. Reiss, was in the hospital preparing to undergo major surgery. She left a note in her drawer at the hospital to her husband telling him where to locate various assets in the house which she alone owned, giving them to him. The location of the note was communicated to the husband by a friend of the decedent while she was in the operating room under ether. The trial court found (p. 44) that1 £ £ after the operation and until the date of her death * * * she was in a coma most of the time; was unable to recognize members of her family; and unable to carry on intelligent conversation ’ ”. Following the instructions in the note the husband collected the assets listed. Upon a suit brought by her trustees and personal representatives to recover the assets, the husband claimed that either the letter constituted a valid gift causa mortis or that the letter appointed him agent to effect a gift causa mortis to himself.
On the appeal the New Jersey Supreme Court rejected the first claim on the grounds that there had never been a delivery of the subject matter of the gift causa mortis. The agency claim was rejected on the grounds that her comatose state during and after the operation deprived her of the capacity to become a party to the transaction and so the agency was suspended or revoked.
Again, while there is no direct New York law in the matter, Merritt v. Merritt (27 App. Div. 208), which is the leading case in New York on the proposition that insanity suspends an agency, quotes with approval Davis v. Lane (10 N. H. 156).
In the Davis case the decedent’s wife, who had been his general agent for several years, conducted business on his behalf, while he was lying entirely senseless upon his death bed. In holding the transaction void the New Hampshire court stated: “ We are of the opinion, however, that the authority of the agent, where the agency is revocable [i.e., not coupled with an interest] must cease, or be suspended, by an act of Providence depriving the constituent of all mind and ability to act for himself; and that this doctrine can be sustained by very satisfactory principles.
“ An authority to do an act, for, and in the name of, another, pre-supposes a power in the individual to do the act himself, if *400 present. The act to be done is not the act of the agent, but the act of the principal; and the agent can do no act in the name of the principal which the principal might not himself do, if he were personally present * * *
“ But it would be preposterous, where the power is in its nature revocable, to hold that the principal was, in contemplation of law, present, making a contract, or acknowledging a deed, when he was in fact lying insensible upon his death bed, and this fact well known to those who undertook to act with and for him.”
Accordingly, if the objectors prove that, at the time of the agent’s transfer of the funds, and thereafter, the decedent was mentally incompetent or incapacitated by reason of her alleged comatose or semicomatose state, then the agency would have been suspended or revoked. The court, therefore, finds that the proposed amended objections raise a valid issue of law and fact.
Permission is given to file verified amended objections within 10 days of the date of the order to be entered hereon.