**ESTATE of Mona BETTIN, Deceased.**

**Fredric BETTIN, Executor, Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 74–3350.**

United States Court of Appeals, Ninth Circuit.

Oct. 1, 1976.

Rehearing and Rehearing In Banc Denied Dec. 6, 1976.

Leon Fleishman (argued), of Bettin, Fleishman & Swan, Los Angeles, Cal., for petitioner-appellant.

Meade Whitaker, Atty. and Ernest J. Brown, Atty. (both argued), of Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BROWNING and LAY,* Circuit Judges, and WATERS,** District Judge.

PER CURIAM:

This is an appeal from a decision of the United States Tax Court. The sole issue for consideration in this appeal is whether the Tax Court correctly found that withdrawals by the petitioner of certain amounts from a joint bank account in the names of himself and the decedent did not constitute gifts from the decedent to himself.

*Facts*

The following facts are adopted substantially from the Tax Court's Memorandum Opinion, filed April 24, 1974. Fredric Bettin, petitioner, is the nephew and executor of the estate of Mona E. Bettin, who died on September 24, 1967. Petitioner was a resident of Los Angeles County, California, at the time he filed the petition. He filed an estate tax return with the District Director of Internal Revenue, Los Angeles, California.

Mona E. Bettin (the decedent) was born on September 20, 1888 in the state of Kansas. The decedent was a physician throughout her professional life. On January 1, 1964, the decedent was found to have generalized peritonitis from a ruptured diverticulitis of the colon. Emergency surgery was performed that day. A subsequent operation was performed on February 12, 1964. The decedent was able to survive these operations because of her remarkable stamina and good general physical condition. At that time, the decedent showed signs of cerebral arteriosclerosis, manifested by confusion, forgetfulness and bouts of irrationality.

On January 1, 1967, the decedent executed a holographic will whereby she devised and bequeathed to the petitioner the major portion of her estate which amounted to approximately $1,000,000. During the month of January 1967, the petitioner made arrangements to be married and was married on May 6, 1967. The decedent attended the marriage reception. The petitioner also made arrangements during the month of January 1967, to purchase a home, and on February 20, 1967, entered into an escrow contract.

On January 4, 1967, the petitioner petitioned the Probate Court of Orange County, California, for a hearing to have the decedent declared incompetent. In support of this petition, the petitioner presented a declaration of the decedent's personal physician, which declaration stated in part:

" . . . I have been the personal physician to Mona E. Bettin, M.D. for a number of years. I talked to her on September 20, 1966 and examined and talked to her on numerous occasions since that date. I last examined her on De-

---

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

** Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

cember 24, 1966 and talked with her on December 31, 1966. It is my opinion that she has been totally incompetent, disoriented, and not able to understand and recollect the nature, extent and situation of her property since September 19, 1966. Her condition has deteriorated between each visit from that date."

On January 18, 1967, a joint tenancy bank account was opened with a deposit of $37,739.54, which funds belonged to the decedent. This joint account was established in the names of Mona E. Bettin and Frederic Bettin. The decedent and the petitioner went to the bank together to establish this account and both signed the signature card.

On January 24, 1967, the petitioner withdrew $33,000 from the joint account. This money was used to purchase a home and furniture for the petitioner and his fiancee.

On January 27, 1967, the Probate Court of Orange County appointed the petitioner as the guardian of the decedent.

On February 1, 1967, the petitioner withdrew $1,803 from the joint account for the purpose of purchasing a guardianship bond.

On July 7, 1967, the petitioner withdrew $3,000 from the joint account. He gave this money to his wife.

On August 15, 1967, the petitioner withdrew the remaining balance of $82.79 from the joint account.

After the appointment of petitioner as her guardian, the decedent maintained her own bank checking account and paid most of her bills from this account. She conducted numerous stock transactions which resulted in substantial profits.

According to the decedent's personal physician, she was in satisfactory physical condition at the time she was declared mentally incompetent and had a normal life expectancy of a woman of her age.

On September 24, 1967, the decedent died unexpectedly of bronchial pneumonia which she contracted only two days before her death.

On October 27, 1967, the petitioner was appointed the executor of the estate. On January 18, 1968, the Probate Court of Orange County approved the Waiver of First and Final Account and Report of the Guardian and discharged the guardian.

*Withdrawals made subsequent to the guardianship*

As to the three withdrawals made subsequent to the decedent's being adjudicated incompetent, it is clear that the decedent lacked the legal capacity to make a gift since one of the essential elements of a valid gift under California law is the competency of the donor to contract. *Hyman v. Tarplee*, 64 Cal.App.2d 805, 149 P.2d 453 (1944). California Civil Code § 40 provides in pertinent part:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity."

Since the decedent lacked the capacity to contract after January 27, 1967, she also was incapable of making a gift as of that date. The Tax Court was thus correct in finding that the three withdrawals after that date did not constitute valid gifts.

*Withdrawal made prior to the guardianship*

One withdrawal was made three days prior to the incompetency determination. The Tax Court reasoned that the presumption of sound mind was rebutted in view of (1) the judicial determination three days after the withdrawal, and (2) the statement by the decedent's physician that she had been incompetent since 1966. Accordingly, the Tax Court found that this withdrawal also did not constitute a valid gift.

In arguing that the decedent was competent to make a gift on January 24, 1967, the petitioner is actually taking an inconsistent position, since it was on January 4, 1967 that he first petitioned the Probate Court for a hearing to have the decedent declared incompetent. He must have thus believed as early as that date that the decedent was mentally incompetent. In any event, the proper scope of

review of findings of fact by the Tax Court is limited to a determination of whether those findings are clearly erroneous. *Thomson v. Commissioner of Internal Revenue*, 406 F.2d 1006, 1010 (9th Cir. 1969). In view of the evidence presented, we are unable to conclude that the Tax Court's findings of fact in this case were clearly erroneous.

The petitioner additionally argues that even if the decedent was incompetent, the gifts were valid under the "substituted judgment" rule set forth in *In Re Guardianship of Christiansen*, 248 Cal.App.2d 398, 56 Cal.Rptr. 505 (1967). This rule allows a court to authorize gifts from an incompetent's estate under very limited conditions or as stated by the court,"where it appears from all the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate." Id. at 424, 56 Cal.Rptr., at 522. It is clear that the rule enunciated in *Christiansen* was only to be applied in unusual circumstances where the court was in a position to supervise withdrawals from the ward's estate. It should not be applied in the present case where the petitioner seeks to have the transfer validated after the fact. Accordingly, we find that the "substituted judgment" rule is not applicable to the facts of this case and we conclude that the Tax Court was correct in finding that the January 24, 1967 withdrawal did not constitute a valid gift.

All other issues raised by the petitioner are without merit.

The judgment of the Tax Court is affirmed.