ESTATE of Arthur K. WATSON, Ann Hemingway Watson, Helen W. Buckner, Ann C. H. Watson and Jane W. Watson, as Executrices of the Will of Arthur K. Watson, Deceased, Plaintiffs,

v.

William E. SIMON, as Secretary of the Treasury, and Hubert J. Hintgen, as Commissioner of the Bureau of Public Debt, Defendants.

No. 75 Civ. 1983.

United States District Court, S. D. New York.

Oct. 28, 1977.

7. *Id.*

John R. Hupper, Cravath, Swaine & Moore, New York City, for plaintiffs.

Naomi Reice Buchwald, Asst. U. S. Atty., Robert B. Fiske, Jr., U. S. Atty., New York City, for defendants.

## OPINION

GRIESA, District Judge.

This is an action by the Estate of Arthur K. Watson and the executrices of the estate, who hold certain United States Treasury bonds. Plaintiffs have brought this action against the Secretary of the Treasury and the Commissioner of the Bureau of Public Debt, and request a judgment declaring that the bonds are entitled to be applied against the federal estate tax of Arthur K. Watson's estate, and directing that the bonds be redeemed and so applied.

Defendants move to dismiss the action under Fed.R.Civ.P. 12(b) on the grounds that the court lacks jurisdiction over the subject matter, and the complaint fails to state a claim upon which relief may be granted. Plaintiffs have moved for summary judgment in their favor under Rule 56(a).

Defendants' motion for dismissal is denied. Plaintiffs' motion for summary judgment is granted.

The facts are undisputed. On July 18, 1974 Mr. Watson suffered severe head injuries from a fall. He remained unconscious from the time of this incident until his death on July 26, 1974.

Some years earlier, Mr. Watson had given a power of attorney to his brother, Thomas J. Watson, Jr., and his lawyer, George J. Gillespie, III, empowering them, among other things, to buy and sell securities. This power of attorney was still in effect at the time of Mr. Watson's fall. Mr. Watson did not, of course, revoke the power of attorney following the fall, since he was unconscious.

On July 19 and July 22, 1974 the attorneys-in-fact purchased $8 million in United States Treasury bonds for Mr. Watson. These bonds are what are commonly called "flower bonds." They carry relatively low interest rates and trade well below par value. There is a market for these bonds that yields less than the yields of high coupon treasury bonds largely because, under the terms of their issuance, they may be redeemed at par for the payment of the owner's federal estate tax.

The offering circulars pursuant to which the various bonds were issued contained the following language or its equivalent:

"Any bonds issued hereunder which upon the death of the owner constitute part of his estate, will be redeemed at the option of the duly constituted representatives of the deceased owner's estate, at

par and accrued interest to date of payment, provided:

> (a) that the bonds were actually owned by the decedent at the time of his death;
>
> (b) that the Secretary of the Treasury be authorized to apply the entire proceeds of redemption to the payment of Federal estate taxes."

Each of the bonds carried the following legend on its face:

> "This bond, upon the death of the owner, will be redeemed at the option of the duly constituted representatives of the deceased owners' estate, at par and accrued interest, if it constitutes part of such estate and the proceeds are to be applied to the payment of federal estate taxes . . . ."

Following Mr. Watson's death, his executrices submitted a federal estate return showing a tax due of $4,742,000. Certain of the bonds in question in this total amount were tendered to the Federal Reserve Bank of New York, as agent for the Bureau of Public Debt, United States Department of the Treasury, for redemption at par in payment of this estate tax. These bonds, in the total face amount of $4,742,000, are listed in Exhibit A to the complaint in this action. Subsequently the Treasury advised the estate that the tendered bonds were unacceptable for redemption. The Treasury took the position then, as it does now, that Mr. Watson was not the owner of the bonds at his death, because they were purchased pursuant to a power of attorney which had been invalidated by Mr. Watson's unconscious state.

Plaintiffs are seeking declaratory relief, and a direction to defendant officials, that any of the bonds, which have been tendered, or which may be tendered in the future in payment of federal estate taxes, are to be redeemed and applied against such taxes.[1]

I reject defendants' contention that the onset of Mr. Watson's unconscious state operated to revoke the power of attorney and made the purchase of the bonds in Mr. Watson's name void. The purchase of the bonds was clearly for the benefit of Mr. Watson and his estate. It was a prudent move in view of the serious risk of death existing at the time of the transaction. There is no claim by any legatee, heir or relative of Mr. Watson that the purchase of the bonds somehow effected a transfer of property disadvantageous to them. *In re Berry's Estate*, 69 Misc.2d 397, 329 N.Y.S.2d 915 (Surr.Ct., Queens Co. 1972), cited by defendants, is not in point. In that case the decedent suffered a stroke and was in a comatose condition until her death two months later. Shortly after the stroke, an agent transferred decedent's funds into a Totten Trust account, naming decedent's sister as the beneficiary. The court held the transfer of funds void at the instance of other distributees of the decedent and their assignees.

By contrast, the only party complaining in the present case is the Government, despite the fact that the type of transaction involved—the purchase of bonds in order to provide for federal estate taxes—is precisely in accordance with the purpose of the Government in issuing the bonds here involved.

Mr. Watson's illness did not operate to revoke the power of attorney. His attorneys-in-fact had the authority during this illness to act on his behalf, at least in transactions such as the purchase of these bonds. If Mr. Watson had recovered, there might well have been questions about ratifying or avoiding transactions which occurred during the illness. However, Mr. Watson did not recover and his estate and executrices are the only parties who have the power to either avoid or ratify transactions of the attorneys-in-fact. The estate and executrices have clearly ratified the purchase of

---

1. Plaintiffs' request for relief is not limited to the $4,742,000 thus far tendered. Presumably to cover the contingency that additional estate taxes may be assessed, plaintiffs seek to have a judgment which would cover any additional bonds tendered for such additional taxes. However, plaintiffs are not seeking relief in this action with respect to any of the $8 million in bonds which are not tendered to satisfy federal estate taxes.

the flower bonds. The conclusion is that the bonds were the property of Mr. Watson at his death and are now the property of the estate. *See Finch v. Goldstein*, 245 N.Y. 300, 157 N.E. 146 (1927); *Blinn v. Schwarz*, 177 N.Y. 252, 69 N.E. 542 (1904); *Restatement (Second) of Agency* § 122(1) & Comment d (1958).

I further reject defendants' contention that no remedy is available to plaintiffs in this action. Plaintiffs are entitled to a judgment declaring that the bonds in question were the property of Mr. Watson at the time of his death and are now the property of his estate, and that defendants are obligated to redeem as many of the bonds as are tendered for payment of federal estate taxes due from Mr. Watson's estate and to apply the bonds against these taxes. Plaintiffs are further entitled to a writ of mandamus directing defendants to so redeem and apply the bonds. *Lovallo v. Froehlke*, 468 F.2d 340 (2d Cir.), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1972).

Settle order in accordance with opinion.