ESTATE OF PAULINE M. PFOHL, DECEASED, LOUIS H. PFOHL,
EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 10823–76.    Filed August 7, 1978.

*Donald C. Christ* and *Jeffry N. Grabel,* for the petitioner.
*Michael P. Castetron,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of
$358,872.49 in petitioner's Federal estate tax. Other items
having been settled by the parties, the sole issue remaining for
decision is whether certain U.S. Treasury bonds of a type
redeemable at par value in payment of estate tax liabilities were
includable in decedent's gross estate at their par value rather
than their fair market value at the date of death.

All of the facts have been stipulated and are found according-
ly. The stipulation of facts and the exhibits attached thereto are
incorporated herein by this reference.

Pauline M. Pfohl (hereinafter referred to as decedent) died on
January 16, 1973, a resident of Forest Hills, N. Y. Louis H. Pfohl,
the decedent's surviving spouse, was duly appointed executor.
At the time of the filing of the petition herein, he resided in
Forest Hills, N. Y. Petitioner timely filed a Federal estate tax
return with the District Director of Internal Revenue, New
York, N. Y.

Decedent entered New York Hospital in New York City on
January 8, 1973, for a general examination. On that date, she
duly executed a power of attorney in favor of Mr. Pfohl which
gave him full authority to buy or sell securities in her name for
her. On January 11, 1973, at 11:30 a.m. decedent had a heart
attack. She lost consciousness, which she never regained prior to
her death at 9:40 a.m. on January 16, 1973.

At some time prior to January 12, 1973, Mr. Pfohl instructed Francis J. O'Connor, his attorney in Dubuque, Iowa, to purchase $250,000 of U.S. Treasury bonds for decedent's account through American Trust & Savings Bank (A.T. & S.), Dubuque, Iowa. Delivery and payment for U.S. Treasury bonds, 3½ percent due February 15, 1990, having a face value of $250,000, were completed on January 12, 1973.

Mr. Pfohl has a record of a telephone call at 4:06 p.m. on January 9, 1973, to Mr. O'Connor; Mr. O'Connor has no record of charging Mr. Pfohl for work performed on January 8th, 9th, or 10th, 1973. However, it is his practice not to charge clients for incoming calls consuming only 5 to 10 minutes. His time records show that he placed a telephone call to Mr. Pfohl in New York City on January 11, 1973. Neither Mr. Pfohl nor Mr. O'Connor remembers the exact date of the conversation during which Mr. Pfohl authorized the purchase of the bonds.

Mr. O'Connor directed Leo Kane, senior vice president of A.T. & S., to purchase the Treasury bonds in question. Mr. Kane does not remember the exact date that he was so instructed. However, it is A.T. & S.'s normal business practice and custom to execute an order to purchase U.S. Treasury bonds within 24 hours. The order involved herein was dated January 12, 1973.

On October 10, 1973, petitioner filed a Form PD–1782, Application for Redemption of Treasury Bonds for Federal Estate Tax Credit, with the Federal Reserve Bank of New York. At the same time, the estate tendered $154,000 of U.S. Treasury bonds, 3½ percent due February 15, 1990, together with accrued interest of $908.10, for redemption in payment of Federal estate taxes. The sum of $335.41 representing the balance of the estate tax shown to be due on the return was paid in cash at the time the estate tax return was filed.

Petitioner valued these bonds at their par value of $154,000 in its estate tax return. The remaining bonds, having a par value of $96,000, were reported at their fair market value of $73,320.

In July 1974, the Internal Revenue Service requested decedent's medical records, and petitioner authorized their release on July 18, 1974. On March 11, 1977, the IRS notified the Bureau of Public Debt that it had received information that Mrs. Pfohl became comatose on January 11, 1973.

By letter dated July 19, 1977, the Bureau of Public Debt made

a final determination that the $154,000 of tendered bonds and the remaining $96,000 of bonds held by the estate were not eligible for redemption in payment of the estate taxes.

In the notice of deficiency, respondent determined that, "solely for protective purposes," the $250,000 of U.S. Treasury bonds held by petitioner should be included in the gross estate at their par value. The deficiency notice further stated:

In the event that it is finally determined by the Bureau of Public Debt that the Treasury Bonds are ineligible for the payment of estate taxes, then to the extent permitted by section 6512(a) of the Internal Revenue Code of 1954, the estate tax liability will be reduced accordingly.

The sole question for decision is whether the Treasury bonds are includable in the gross estate at their par value or at their fair market value. Resolution of this question depends on whether the bonds are redeemable at par value in payment of estate taxes (*Bankers Trust Co. v. United States*, 284 F.2d 537 (2d Cir. 1960)), which, in this case, rests solely on the determination of whether decedent owned the bonds at her death.[1] Petitioner argues that we should follow *Estate of Watson v. Simon*, 442 F. Supp. 1000 (S.D.N.Y. 1977), and hold that Mr. Pfohl's purchase of the bonds was at most voidable and that decedent was the owner of the bonds. Respondent contends that *Estate of Watson v. Simon* was incorrectly decided and that Mr. Pfohl's power to purchase securities under the power of attorney terminated when Mrs. Pfohl became comatose and that Mr. Pfohl's purchase was void and not voidable.

Section 6312,[2] which permits taxpayers to use Treasury obligations in payment of their tax liabilities,[3] provides:

It shall be lawful for the Secretary or his delegate to receive, at par with an adjustment for accrued interest, Treasury bills, notes and certificates of indebtedness issued by the United States in payment of any internal revenue taxes * * * to the extent and under the conditions provided in regulations prescribed by the Secretary or his delegate.

One of the conditions for redemption of Treasury bonds at par is

---

[1]This Court has previously determined that it has jurisdiction over the question of eligibility of the bonds for payment of estate taxes. See *Estate of Pfohl v. Commissioner*, 69 T.C. 405 (1977), in which we further noted that the Bureau of Public Debt has agreed to be bound by our decision, thus eliminating the potential for either party being "whipsawed."

[2]Unless otherwise specified, all references are to the Internal Revenue Code of 1954, as amended and in effect at the date of death.

[3]Pub. L. 92–5, 85 Stat. 5, made sec. 6312 inapplicable to obligations issued after Mar. 3, 1971.

contained in section 20.6151–1(c), Estate Tax Regs., which provides:

Treasury bonds of certain issues which were *owned by the decedent at the time of his death* * * * may be redeemed at par plus accrued interest. * * * [Emphasis added.]

As a preliminary matter, we address ourselves to the question whether, in determining the ownership of the bonds involved herein, Federal or State law should apply. Generally, for purposes of the estate tax, courts first determine the legal interests and rights created under State law and then decide whether the interests and rights so created are sufficient to justify including the property in the gross estate. *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940); *Aldrich v. United States*, 346 F.2d 37 (5th Cir. 1965); *Estate of Hoenig v. Commissioner*, 66 T.C. 471, 477 (1976).[4]

However, in the instant case, where bonds representing monetary obligations of the United States are involved, it would not be "beyond the range of federal legislation to deal comprehensively" with the standards by which ownership should be determined. See *Bank of America v. Parnell*, 352 U.S. 29, 34 (1956). Indeed, if the regulations governing the redemption of Treasury bonds for tax purposes contained provisions presenting such standards, we would presumably have been required to apply them. See *United States v. Chandler*, 410 U.S. 257 (1973). But the fact of the matter is that the regulations do no more than specify that the bonds be "owned by the decedent at the time of his death." See p.632 *supra*.[5] Respondent argues that we should fashion an independent standard of Federal law but he has not furnished us with any guidance to such law beyond his ipse dixit assertion of the bare requirement of ownership contained in the regulations. Nor has our own independent research produced any such Federal standard. Such being the case, and given the fact that, as our subsequent analysis will

---

[4]See also *Estate of Bettin v. Commissioner*, T.C. Memo. 1974–102, affd. 543 F.2d 1269 (9th Cir. 1976).

[5]Compare provisions dealing with assignments of United States securities, where incompetency is involved, set forth in General Regulations Governing U.S. Securities contained in 31 C.F.R. sec. 306.57(c) (1977), and 31 C.F.R. sec. 306.95 (1977). However, these provisions are part of a comprehensive set of regulations designed to govern the disposition of securities to protect the Treasury from duplicate demands for payment, see *Bodek v. Dept. of Treasury, Bureau of Public Debt*, 532 F.2d 277 (2d Cir. 1976), a situation not obtaining herein (see p. 636 *infra*). They furnish little, if any, guidance as to the question of "ownership" under provisions of the regulations dealing with matters other than assignments.

show, general principles and New York law (which the parties agree is the pertinent local law) [6] are in accord, we have no need to grapple with the problem which would exist if there were a conflict. Whether we apply New York law or fashion a Federal rule by borrowing from general principles of local law (see *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 594–598 (1973)), we reach the same result.

Petitioner does not contend that it has established that the bonds were purchased prior to the time that decedent became comatose (Rule 142(a), Tax Court Rules of Practice and Procedure) and it is clear that the purchase was completed prior to death. The key issue therefore is the effect of the actions undertaken as the result of instructions given by Mr. Pfohl pursuant to the power of attorney, i.e., whether such actions were sufficient to make decedent the owner of the bonds at her death.

Petitioner contends that a contract entered into on behalf of an incompetent is voidable until disaffirmed by the principal or by his personal representative. Since there was no disaffirmance by decedent or by the executors of decedent's estate, petitioner argues there was at all times a contract which had the effect of making decedent the owner of the bonds at her death. Such was the holding in *Estate of Watson v. Simon*, 442 F. Supp. 1000 (S.D.N.Y. 1977), which involved a factual setting virtually identical to that present herein. Respondent's main argument is that decedent's permanent loss of capacity terminated the authority of her agent, with the result that the contract to purchase the bonds made during her incapacity is void.

The effect of an agreement made by an individual acting under a power of attorney is generally the same as if it were made by the principal directly. 1 Restatement, Agency 2d, sec. 20 (1958). Thus, a contract made on behalf of a principal having limited capacity is subject to attack on the ground of lack of capacity. *Casey v. Kastel*, 237 N.Y. 305, 142 N.E. 671 (1924); *Bankers Trust Co. of Albany, N.A. v. Martin*, 51 App. Div.2d 411, 381 N.Y.S.2d 1001 (3d Dept. 1976). Mental illness is one form of limited capacity (1 Restatement, Contracts 2d, sec. 18 (Tent.

---

[6] N.Y. Gen. Oblig. Law sec. 5.1601 (McKinney 1978), provides that the subsequent incompetence of a principal will not terminate the authority of an individual acting under a power of attorney, if the power of attorney demonstrates that such was the principal's intent. This provision did not become effective until June 10, 1975, and therefore is not applicable to the instant case.

Drafts Nos. 1–7, 1973); *Ortelere v. Teachers' Retirement Board of New York,* 25 N.Y.2d 196, 303 N.Y.S.2d 362 (1969)), and a comatose individual is treated as lacking mental capacity *(In re Berry's Estate,* 69 Misc.2d 397, 329 N.Y.S.2d 915 (Queens County Surr. Ct. 1972); *Estate of Dierks v. Commissioner,* 40 T.C. 539 (1963)).

The general rule, and the rule long-established in New York, is that transactions of a mental incompetent are voidable, and not void. 2 S. Williston, Law of Contracts, sec. 251 (3d ed. 1959) (hereinafter cited as Williston). Thus, a contract entered into by one lacking capacity can be ratified or disaffirmed by the incompetent party upon his regaining competency, *Blinn v. Schwarz,* 177 N.Y. 252, 69 N.E. 542 (1904), or by a duly appointed committee, *Finch v. Goldstein,* 245 N.Y. 300, 157 N.E. 146 (1927), or by the incompetent's estate after the death of the incompetent, *Ortelere v. Teachers' Retirement Board of New York, supra;* Williston, *supra* at sec. 253. Cf. *Estate of Dreyer v. Commissioner,* 68 T.C. 275 (1977). The right of disaffirmance does not extend to the other party to the contract. See *Atwell v. Jenkins,* 163 Mass. 362, 40 N.E. 178, 179–180 (1895). See also *Moore v. New York Life Ins. Co.,* 266 N.C. 440, 146 S.E.2d 492 (1966).

Admittedly, some of the cases contain statements which can be construed as indicating that such transactions are void, rather than voidable. See, e.g., *Dann v. Sands,* 38 App. Div.2d 661, 327 N.Y.S.2d 222, 226 (3d Dept. 1971); *In re Berry's Estate,* 329 N.Y.S.2d at 917; *Application of Lanham,* 1 Misc.2d 264, 144 N.Y.S.2d 401, 404 (Kings County Sup. Ct. 1955). However, both *Dann v. Sands, supra,* and *In re Berry's Estate, supra,* involved actions by estates to avoid transfers made by or on behalf of individuals who made transfers while incompetent, which incompetency lasted until death. The same situation obtained in *Estate of Dierks v. Commissioner, supra.* We read these cases as treating an agreement as void once the transfer is avoided, without deciding the proper characterization of the transfer prior to avoidance. Nor do we view *Application of Lanham, supra,* as helpful to respondent. Because of the unique circumstances of that case, which involved a medical examination of an incompetent, the after-the-fact power to disaffirm was considered insufficient to protect the rights of the incompetent.

A voidable contract is an enforceable agreement subject to the

right of disaffirmance. S. Williston, *supra* at sec. 231; 1 Restatement, Contracts 2d, *supra* at sec. 13. If it is disaffirmed, all parties will be treated as if no agreement had ever been made. See *Estate of Dierks v. Commissioner, supra.* If the contract is ratified, or there is no timely disaffirmance, the original agreement remains in effect. Williston, *supra* at sec. 253; 1 Restatement, Agency 2d, *supra* at sec. 82, comment *c.*

We conclude that the purchase of the Treasury bonds made while decedent was comatose was voidable. Decedent never regained consciousness, and the executor never attempted to avoid the purchase. In fact, he attempted to use the bonds to pay the taxes involved herein. This is sufficient to constitute ratification. See *Bankers Trust Co. of Albany, N.A. v. Martin, supra; In re Kroll's Estate,* 8 Misc.2d 133, 169 N.Y.S.2d 495 (Niagra County Surr. Ct. 1957). The ratification operates to make decedent the owner of the bonds at the time of her death.

The result we reach is in accord with our recent decisions in *Estate of Rolin v. Commissioner,* 68 T.C. 919 (1977) on appeal (2d Cir., Mar. 17, 1978), *Estate of Dreyer v. Commissioner, supra,* and *Estate of Hoenig v. Commissioner, supra.* In each of these cases, the decedent was given an interest by will in the estate of his or her spouse. After the deaths of the decedents, their executors purported to renounce their interests in the estates. In each case, we applied New York law and held that the disclaimer related back to the time of the devise.

We are not unmindful that rights of ratification, disaffirmance, and/or renunciation are subject to the qualification that rights of third persons should not be prejudiced thereby. But we can perceive no person who will be prejudiced by valuing the bonds involved herein at par for estate tax purposes and having them redeemed by the Bureau of Public Debt at the same value. See n. 1 *supra.* See also n. 5 *supra.* Anyone claiming through decedent or her estate will be bound by our decision herein and this should afford the Government full protection against duplicate claims. See *Bankers Trust Co. of Albany, N.A. v. Martin, supra.* See also *Moore v. New York Life Ins. Co., supra; Bullard v. Moor,* 158 Mass 418, 33 N.E. 928, 929 (1893). We also note that, as to $96,000 of bonds, the petitioner has never clearly indicated whether such bonds, or any part thereof, were to be used to pay estate taxes. Presumably such use turns upon the outcome of this proceeding. Cf. *Estate of Simmie v. Commission-*

*er,* 69 T.C. 890 (1978). Any problem which might inhere in this situation can be taken care of in the Rule 155 computation by appropriate action on the part of petitioner herein.

*Decision will be entered under Rule 155.*