Ben B. SILVER, as Executor of the
Estate of Belle Silver,
Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 79 C 2013.

United States District Court,
N. D. Illinois, E. D.

Sept. 18, 1980.

Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff.

John S. Miles, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is an action for breach of contract brought by Ben B. Silver ("Plaintiff"), as executor of the estate of Belle Silver, his deceased sister, against the Secretary of the Treasury and the Commissioner of the Bureau of Public Debt ("Defendants") seeking damages on account of the defendants' refusal to redeem at face value, plus accrued interest, certain United States Treasury Bonds owned by Belle Silver at the time of her death. The bonds were of a variety known as "flower bonds" because of their unique characteristic providing for redemption at full face value plus accrued interest, regardless of actual market value, upon the death of their owner as long as the proceeds are used to satisfy the owner's estate tax liability. Plaintiff has filed a motion for summary judgment which the government opposes on the technical ground that Belle Silver did not actually own the $20,000 worth of bonds in question at the time of her death. Jurisdiction is grounded on 28 U.S.C. § 1331.[1]

The material facts in this case are relatively simple and undisputed. On February 4, 1975, Belle Silver executed a power of attorney in favor of the plaintiff. On February 14, 1975, Belle Silver executed an agency agreement with the First National Bank of Chicago directing the bank to obey plaintiff's instructions with regard to the disposition of cash or securities in Belle Silver's account. On July 13, 1976, plaintiff purchased $20,000 worth of flower bonds on Belle Silver's behalf through the agency of the First National Bank of Chicago Trust Department. On August 13, 1976, Belle Silver died. Thereafter, plaintiff, as executor of his sister's estate, tendered the bonds to the Department of the Treasury for redemption at full face value plus accrued interest in partial satisfaction of Belle Silver's estate tax liability. Upon the government's refusal to accept the bonds, plaintiff sold them for $15,650 and instituted the present action for breach of contract.

The government's argument in support of its refusal to redeem the flower bonds at full face value is based upon language in the offering circular for the bonds stating that the bonds will be redeemed upon the death of their owner "provided . . . that the bonds were actually owned by the decedent at the time of his death." The Treasury Department interprets this language to require absolute, unqualified ownership of the bonds in the decedent. Defendant's Brief at 8. The government asserts that Belle Silver may have been incompetent at the time the bonds in question

---

**1.** Jurisdiction is proper under section 1331 without regard to the amount in controversy in cases against the United States, any agency thereof, or any officers or employees thereof in his official capacity. In this case, plaintiff seeks recovery of $4,518, an amount equal to plaintiff's contract damages plus a refund of interest wrongfully assessed against it for late payment of federal estate taxes, less a set-off in favor of defendant. Where the amount in controversy does not exceed $10,000, the district courts have concurrent jurisdiction with the Court of Claims under the Tucker Act "to render judgment . . . upon any express or implied contract with the United States." 28 U.S.C. §§ 1346(a)(2), 1491. *See Estate of Watson v. Blumenthal*, 586 F.2d 925, 928 (2d Cir. 1978).

were purchased, and that her incompetency would have terminated the agency created by the power of attorney.[2] If so, the decedent would not actually have owned the bonds at the time of her death. The government maintains that since plaintiff has failed to prove that his sister was competent at the time the bonds were purchased, plaintiff is not entitled to summary judgment as a matter of law. At the very least, the government argues, there is a factual dispute as to the competency of Belle Silver at the time the bonds were purchased making summary judgment inappropriate at this juncture.

 This might be a difficult case but for the fact that the government's statement of the law of agency is clearly inaccurate,[3] or at the very least misleading. Even if Belle Silver were mentally incompetent at the time the bonds were purchased, an issue that we need not now decide, it is hornbook law that "the agent of one who becomes mentally incompetent to act on his own account or to appoint an agent, does not necessarily lose authority to act for the principal." Restatement (Second) of Agency § 122, Comment d (1958). Although the Restatement itself notes that this is an "amorphous" area with few clear cut answers, there are a few definitive decisions on the issues involved in the instant case. Thus, in three recent cases involving the redemption of flower bonds, courts have reiterated the principle that a contract entered into by an agent for one lacking capacity can be ratified or disaffirmed by the incompetent upon his or her regaining competency or by the incompetent's estate. *See United States v. Manny*, 463 F.Supp. 444, 449 (S.D.N.Y.1978); *Estate of Watson v. Simon*, 442 F.2d 1000, 1002 (S.D.N.Y. 1978), *rev'd on other grounds*, 586 F.2d 925 (2d Cir. 1978); *Estate of Pfohl v. Commis-*

*sioner*, 70 T.C. 630, 635 (1978). In each of these cases, the principal was in a coma or unconscious at the time the person with power of attorney purchased the flower bonds. The principals died without regaining competence and the executors of their estates ratified the transactions in question by tendering the bonds in payment of estate taxes. In each case, the government was ordered to redeem the bonds at face value plus interest.

 While it is true that transactions of a mental incompetent are voidable, and not void, S. Williston, The Law of Contracts, § 251, the right of ratification or disaffirmance rests solely with the principal, once he or she regains competence, or the estate and does not extend to the other party to the contract. *Estate of Watson v. Simon*, 442 F.Supp. 1000, 1002 (S.D.N.Y. 1978) ("Mr. Watson did not recover and his estate and executrices are the only parties who have the power to either void or ratify the transactions of the attorneys–in–fact."); *Estate of Pfohl v. Commissioner*, 70 T.C. 630, 635 (1978); *Wing v. Lederer*, 77 Ill. App.2d 413, 222 N.E.2d 535, 538 (5th Dist. 1966); *Moore v. New York Life Insurance Co.*, 266 N.C. 440, 146 S.E.2d 492 (1966); *Atwell v. Jenkins*, 163 Mass. 362, 40 N.E. 178 (1895); *Martin v. Judd*, 60 Ill. 78 (1871); 3 Am.Jur.2d Agency § 162; Illinois Law and Practice Agency § 201. Whether or not Belle Silver was truly incompetent at the time the flower bonds were purchased pursuant to the power of attorney, the estate has implicitly ratified the transaction by tendering the bonds to the government for redemption. Neither the executor nor the beneficiaries have alleged any detriment to the estate. The only party complaining is the government.

---

**2.** The government has attached various nursing home notes and hospital records to its motion in opposition to plaintiff's motion for summary judgment. The notes and records indicate that Belle Silver was disoriented during her stay in a nursing home in 1975–76 and that she may have been unconscious or comatose for all or part of the time she was hospitalized in July of 1976.

**3.** Neither party has addressed the issue of what law should govern this case. The issue is basically one of agency law and as far as the Court can determine, the outcome would not differ whether Illinois law or general federal principles are applied.

Especially when, as in this case, the actions of the agent were clearly for the benefit of the principal and her estate, it would be incongruous to hold that the agency was terminated and the transaction voided by the alleged mental incompetency of the principal. It is precisely this state of affairs that the power of attorney was supposed to protect against. As the court said in *United States v. Manny*, 463 F.Supp. 444, 449 (S.D.N.Y.1978), "[t]he better rule would provide some flexibility so that where the agent's acts were detrimental to the principal, they could be avoided by himself if he regained consciousness or by his representative if he did not." [4] This Court concludes that the bonds were owned by Belle Silver at the time of her death and are now the property of her estate.

Accordingly, judgment is entered in favor of the plaintiff for the sum of $4,518, plus interest from the date of judgment and allowable costs. It is so ordered.

**4.** In *Manny, Estate of Watson*, and *Estate of Pfohl*, as well as in the case at bar, the period of alleged incompetency of the principal was of relatively short duration. We have no occasion to comment upon whether a different result could be reached in a case where the principal is incompetent for a prolonged period of time.