**Verena G. BROUSSARD, Appellant,**

v.

**LAMAR PLUMBING & SERVICE COMPANY, Appellee.**

**No. 6905.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 13, 1967.

Donald R. Hallmark, Houston, for appellant.

Weller, Wheelus & Green, Beaumont, for appellee.

HIGHTOWER, Chief Justice.

This appeal by plaintiff, Verena Broussard, is from a summary judgment in favor of defendant, Lamar Plumbing & Service Company.

The substance of plaintiff's very brief petition is: On the 3rd day of June, 1965, one of defendant's employees (Melville Moon) serviced a dishwasher in plaintiff's home; after Moon had quit for the day, a fire occurred in plaintiff's kitchen, spread throughout the house, causing considerable damage to the same, all of which was proximately caused by the negligent acts of defendant's employee, Moon.

Plaintiff's testimony was that the machine had been smoking several days before the day Moon inspected her machine.[1] On that day, he told her the fan motor was only burned out and that it would be allright for her to go on and use the machine until he could order and replace said motor; that she continued to use the machine for several more days, after which a fire occurred in the same approximately 30 minutes after she had quit using it, causing damage as aforesaid. She knew not the cause of the fire.

Plaintiff filed no reply to defendant's motion for judgment, but did file an affidavit by Don O'Dell, a fire marshall for The City of Beaumont, in which it was stated that, after the fire, he inspected plaintiff's residence and " *  *  * concluded at that time and it is my opinion now that the fire originated  *  *  * in the dishwasher, probably as the result of an exposed heating coil coming in contact with the wall for a sufficient length of time to ignite that combustible material."

Moon, testifying for defendant as an expert on such machines, stated that upon going to plaintiff's home, he found the fan motor in the machine was not running. He merely told plaintiff what was wrong and that as soon as he received a new part he would install it. Inspecting the machine, he checked the heating element and the fan motor by cycling the dishwasher through the drying cycle. He told plaintiff she could use the machine but that it would not dry the dishes. He determined that the failure of the fan motor was the cause of the smoke; that otherwise the machine, at the time of his inspection, was running perfectly. His testimony reflects that his inspection was the usual and customary one in such type of business. In short, his testimony eliminated every possible inference or probability that the fire was the result of any negligence or the proximate cause of any act or omission attributable to him.

In plaintiff's brief it is contended that the evidence raised a fact issue that defendant owed a duty to plaintiff to reasonably inspect her machine; that defendant failed in its duty, thus causing injury. We do not agree.

The testimony of Moon, compared with that of plaintiff and O'Dell, controls the case. Plaintiff's testimony of itself was of no consequence on the issue of the burden of proof cast upon defendant.

We are left with the affidavit of O'Dell to raise a disputed issue of fact against the positive testimony of Moon hereinbefore set out.

With all the testimony in mind, the problem before the trial court was whether the evidence before him, if offered in trial, would compel the submission of issues of

---

1. All testimony hearin by deposition or affidavit.

fact to the jury. The testimony of O'Dell or plaintiff did not contradict the testimony given by Moon in any material respect, and we are of the opinion that the court correctly ruled in favor of defendant.

Affirmed.

STEPHENSON, Justice.

I concur with the result reached in the opinion of Chief Justice Hightower, but for different reasons.

The difficulty in this case arises from the fact that plaintiff pled general negligence and the defendant filed no special exception. We are forced to look to the evidence to determine whether or not there is evidence to support a finding of any conceivable negligence.

The statement by O'Dell that, in his opinion, the fire originated in the dishwasher, probably as a result of an exposed heating coil, was an opinion of fact which he, as fire marshall for 5 years, was qualified to give. This was evidence that the fire was caused by the dishwashing machine, but had no bearing on the issue of negligence.

In his brief, plaintiff suggests the negligence of defendant was in failing to properly inspect the dishwashing machine so as to discover the exposed coil. It is argued that defendant should have taken off the front panel, spent more time on the inspection and should have inspected the dishwashing machine from the rear.

I find no evidence in this record that a person of ordinary prudence, under the same or similar circumstances, would have made a different inspection from the one conducted by defendant. All of the evidence as to the inspection comes from defendant. In the first place, there is no evidence that defendant did not remove the front panel, as defendant testified he did not remember. Assuming that defendant did not take off the front panel, there is no evidence that such would have been the usual inspection to discover the cause of the

smoke. Likewise, there is no evidence that the 10 to 15 minutes defendant testified he took to make his inspection was not sufficient time under the circumstances. Also, there is no evidence that a prudent person would have gone into the rear of the machine. Plaintiff, at most, did no more in this case than show that damage was caused by a fire originating in the dishwashing machine which defendant had inspected. It is elementary, according to the law of this state, that the occurrence of an accident is not of itself evidence of negligence. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195.

The extent of the inspection, under the circumstances of this case, is a matter involving special training and knowledge, and also involving usage and custom. All of the evidence showing defendant made the usual and customary inspection, the fire itself is not proof as to the contrary. There is no liability without fault in this case, and plaintiff's evidence did not establish negligence.

Plaintiff has a point of error that, in the interest of justice, the case should be remanded because there had not been a full development of the facts. The "interest of justice rule" has no application to this situation. Inasmuch as we have found the trial court entered an errorless judgment, the case cannot be remanded for a fuller development of the facts. City of Houston v. Blackbird (Tex.), 394 S.W.2d 159.

PARKER, Justice (dissenting).

I respectfully dissent because there are genuine issues as to material facts involving negligence.

Mrs. Verena G. Broussard testified she called Mr. Moon because she was concerned with her dishwasher, from which smoke was coming when used. This condition had existed some two weeks or so. The dishes dried. Mr. Moon went to the Broussard home. There, in the kitchen, he asked Mrs. Broussard and the maid what

trouble they were having with the dishwasher. They told him they had been seeing smoke and smelling something burning. He testified that was the response to his inquiry. He stated it took him approximately 10 minutes to make the inspection and determine what was wrong. He determined the fan motor wasn't running. In his words, he stated:

I checked the dishwasher, but I don't remember whether I removed the front panel or not; that is not necessary, to check the drying element. But when I turned the machine on, I could tell what was wrong: the fan motor wasn't running. I merely told them what was wrong with the dishwasher, that we would order a part for it, and as quick as the part came we would come out and repair it; that was all I done.

Mr. Moon told Mrs. Broussard "it would be all right for her to go ahead and use the dishwasher, but she wouldn't have any drying cycle, her dishes wouldn't be dry." After Mr. Moon left, the Broussards continued to use the dishwashing machine for about a week. The smoke came out of the machine and dried the dishes as it had before Mr. Moon's visit. About 8:00 p. m., on June 3, 1965, Mrs. Broussard turned off the dishwashing machine and went upstairs to her grandchildren. About 8:30 p. m., the children smelled smoke. Mrs. Broussard went to the kitchen, opened the dishwasher, and flames came out of it—solid flames. Flames were going up the wall above the dishwasher. She closed the dishwasher and called the fire department.

Don O'Dell, assistant fire marshall of Beaumont, inspected Mrs. Broussard's home after it was damaged by the fire, and was of the opinion that the fire originated in the dishwasher, "probably as a result of an exposed heating coil coming in contact with the wall for a sufficient length of time to ignite that combustible material." All evidence is to the effect that the fire was caused by the dishwashing machine. A reasonable inspection by Mr. Moon is such inspection as a reasonably prudent man, representing himself to be an expert in dishwashing machines, in the exercise of ordinary care would make in response to his employment by Mrs. Broussard to determine and correct the origin of the smell of burning and the smoke. His duty was not only to repair the machine, but to inspect it to determine the origin of the smoke and advise her whether or not it was safe to use. Mrs. Broussard was not qualified to determine the cause of the smoke. Mr. Moon represented himself to be so qualified. Mr. Moon was the sole proprietor of Lamar Plumbing & Service Company. He qualified as an expert serviceman on this particular dishwashing machine. All of the evidence as to the details of Mr. Moon's inspection comes from him. He is an interested witness. In effect, he testified that the inspection he made was that which would have been made by a person of ordinary prudence under the same or similar circumstances. Mr. Moon's detailed testimony as to his inspection is summarized as follows:

By cycling the dishwasher through the drying cycle, he found that the fan was not turning. From this, he concluded the fan motor was the cause of the smoke. This dishwashing machine was mounted under the kitchen cabinet. From the front, by using a flashlight underneath, he determined the fan motor was out. The dishwasher is off the floor some four inches. He determined that the motor was burned out because it was not turning. He told Mrs. Broussard that she needed a new fan motor and he would order one. The purpose of the fan motor is to blow warm air over the dishes. Air, pulled in from the outside through a vent, is blown over the heating element composed of wire coils. The coils get red hot as an electric heater does. This coil would get much hotter if there was no fan blowing over it. There is a metal vent at the back of the machine near the wall taking this hot air up to the dishes after they have been washed. He did not inspect any other part of the dish-

washer other than the fan motor. The failure of the fan motor could cause smoke, but he never mentions seeing smoke. Categorically, he testified he couldn't remember having checked anything on this dishwasher other than the fan motor. The heating element is two-thirds of the way from the front toward the back of the dishwasher which was in a cabinet and back against the wall. This dishwasher has no back cover. At the top is the tub. It is made of porcelain. There is a drying vent of heavy gauge metal carrying the warm air from the drying element up through the tub where the dishes are. There is nothing between the heating element and the wall except a metal cylinder enclosing the heating element. The machine itself is of metal and porcelain. These machines are supposed to have safety devices to turn off the heating element if it gets too hot. Mr. Moon did not test the safety device, nor did he know which of three types was in the machine, if any, nor did Mr. Moon know at what temperature any of the three safety devices were set to go in operation to cut off the heating coil. Should a safety device fail, the result would be a burned-out heating coil. The same principle is involved in a small electric heater that can be burned all day, but the latter has a lower coil rating—that is to say, the safety device on an electric heater operates at a lower temperature than the safety device on the heating coil of an electric dishwasher. Moon testified that in order to inspect the back of the machine and the wall he would have been required to disconnect the plumbing and electricity and go to considerable trouble.

At no place does Mr. Moon say that he saw smoke coming from the motor. His testimony as to customary and usual inspection is not corroborated.

The metal vent carrying the hot air to dry the dishes and the metal container of the heating coil are conductors of heat, as a matter of common knowledge. Such heat, over a long period of time, although intermediate, as a matter of common knowledge is known to cause smoldering of a combustible material with smoke and sometimes with a flame. The wall was composed of combustible material. Moon undertook and was under the duty to inspect the dishwashing machine for the purpose of determining (1) if it was likely to cause a fire in its location and (2) to repair it and prevent a fire. In this action for damages resulting from the fire caused by the dishwasher, a judge or jury might consider the duty of reasonable inspection is not confined to mere optical observation of the machine in place in the most convenient manner, but also calls for tests to determine the origin of the smoke and examinations of the back of the machine against the wall of combustible material and the wall, particularly when Mr. Moon considered the dishwashing machine itself was fireproof.

The facts of this case are somewhat similar to those found in Brown v. Frontier Theaters, Inc., 369 S.W.2d 299 (Tex.Sup. Ct.1963). In that case, electrical defects in a neon sign were reported by Mrs. Brown to Mr. Ackley, manager for Frontier. Mr. Ackley sent an electrician to the scene. The electrician made some repairs and instructed Mrs. Brown that it was safe to turn a switch and use the neon sign. Mrs. Brown continued to see sparks with the switch on. She advised Mr. Ackley of this and he instructed Mrs. Brown to continue to use such neon sign. The Browns were following and relying entirely upon such instructions when the fire occurred. The Supreme Court held that the trial court was correct in its finding that Frontier Theaters, Inc., acting through Ackley, was negligent in failing to repair the electrical defects that were the cause of the fire.

Whether or not Mr. Moon exercised the proper degree of care is not to be determined by referring to his own personal judgment in reference to the situation. Although he acted in good faith, an omission of proper inspection on his part is negligence. As said in Oceanic Steam Nav.

Co. v. Aitken, 196 U.S. 589, 596, 25 S.Ct. 317, 318, 49 L.Ed. 610:

> * * * it is a mistake to say, * * *, that if the man on the spot, even an expert, does what his judgment approves, he cannot be found negligent. The standard of conduct, whether left to the jury or laid down by the court, is an external standard, and takes no account of the personal equation of the man concerned.

Also see Hanson v. Ponder (Tex.Com.App.) 300 S.W. 35 [aff. in part and rev. in part (Tex.Civ.App.) 293 S.W. 219].

In the light of common knowledge and experience, irrespective of the admissibility of Moon's testimony that he made the customary inspection of the machine, a court or jury might arrive at a standard of ordinary care in the premises entirely different from Moon's [Texas Co. v. Brown, 82 S.W.2d 1101, 1106 (Tex.Civ.App.1935, error dismissed) and cases cited therein], and find that Moon was negligent in his inspection and his assurance to Mrs. Broussard that it was safe to operate the machine. Much of the evidence of Moon is opinion evidence and is not conclusive of a fact issue. Fry v. Dixie Motor Coach Corporation, 142 Tex. 589, 180 S.W.2d 135, 136 (1944). Simmonds v. St. Louis B & M Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 334 (Opinion of Commission adopted 1936).

Referring to the testimony of O'Dell, mentioned in Justice Stephenson's concurring opinion, I would add to it: Lamar Plumbing & Service Company here questions the sufficiency of O'Dell's affidavit, urging that it does not comply with the requirements of Rule 166–A. I agree with Justice Stephenson's statement as to O'Dell's affidavit. Further, Lamar Plumbing & Service Company did not object to the form of O'Dell's affidavit in the trial court. Objections could not be initially raised on appeal to O'Dell's affidavit. Hall v. Fowler, Tex.Civ.App.1965, 389 S.W.

2d 730. Jackson v. Hanover Ins. Co., Tex.Civ.App.1965, 389 S.W.2d 328. American Hydrocarbon Corp. v. Hickman, Tex. Civ.App.1965, 393 S.W.2d 197.

Under the record in this case, I would reverse the judgment of the trial court, remanding the case for trial upon the merits.