**Verena G. BROUSSARD, Petitioner,**

**v.**

**Melville MOON, Jr., d/b/a Lamar Plumbing & Service Company, Respondent.**

**No. B–677.**

Supreme Court of Texas.

July 24, 1968.

Rehearing Denied Oct. 2, 1968.

Donald R. Hallmark and Lawrence D. Thompson, Houston, for petitioner.

Weller, Wheelus & Green, Kyle Wheelus, Beaumont, for respondent.

STEAKLEY, Justice.

The problem here is whether Respondent, Melville Moon, Jr., defendant below, was entitled to a summary judgment against the suit of Mrs. Broussard for fire damages to her home and personal belongings allegedly resulting from the negligence of Respondent. The Court of Civil Appeals in three opinions, one justice dissenting, affirmed the action of the trial

court which sustained Respondent's motion for summary judgment and entered a take-nothing judgment against Petitioner. 421 S.W.2d 734.

Mrs. Broussard alleged in her suit that on or about June 3, 1965, Mr. Moon responded to a call to service the dishwasher in the kitchen of her home; that a fire occurred in her kitchen and spread throughout the house after the service call; and that the damages resulting therefrom were proximately caused by the negligence of Respondent. Each called the other to testify by deposition under the adverse party rule and upon the basis of these depositions Respondent thereafter moved for summary judgment. This deposition testimony will be reviewed in some detail. Mrs. Broussard and her domestic servant had, for a period of about two weeks, smelled smoke or something burning upon using her Kitchenaid dishwasher. Wisps of smoke were observed upon opening the dishwasher door. In response to a call from the daughter-in-law of Mrs. Broussard, Mr. Moon came to the home to inspect and service the appliance. He was informed of the smoke and fire indications involving the dishwasher. After completing his inspection of ten to fifteen minutes, Mr. Moon informed Mrs. Boussard that the trouble was caused by an inoperative fan motor which would require the ordering of a replacement part. Mrs. Broussard inquired whether or not she could continue to use the dishwasher and was assured that she could do so but that she would be without the drying cycle. Following a subsequent use of the dishwasher, the exact date of which—whether the following day or a few days later, and whether or not the dishwasher had been used a number of times in the meanwhile—is unclear, Mrs. Broussard and her grandchildren smelled smoke. Upon investigation smoke was seen in the back stairway of the home and upon opening the dishwasher flames emitted therefrom and were also observed reaching up the wall above the dishwasher. The Fire Department was called and put out the fire.

The deposition testimony of Mr. Moon established his qualifications in the servicing and repairing of dishwashers, particularly the Kitchenaid dishwasher which he sold and serviced. He verified the request to check Mrs. Broussard's dishwasher and her complaint of smelling smoke or something burning upon its use. He checked the dishwasher but did not recall whether or nor he removed the front panel, saying that such was not necessary since he could tell what was wrong when he turned the machine on, namely, "the fan wasn't running." He said his inspection took approximately ten minutes; that "If somebody comes to you and says, 'Look at my dishwasher; it's smoking', you have two choices: you can either take the panel off or get down and look underneath." He verified that he told Mrs. Broussard that "it would be all right for her to go ahead and use the dishwasher, but she wouldn't have any drying cycle, her dishes wouldn't be dry." He stated that it was normal procedure when servicing a dishwasher of this type to inform the owner that it may continue to be safely used even though "the fan motor is out." He stated that he did not inspect any other part of Mrs. Broussard's dishwasher except the fan motor, it being his conclusion that this was what was causing the smoke. He expressed the view that it would be almost impossible to set the dishwasher on fire and that he had never experienced a dishwasher burning out and setting the surrounding walls on fire. He described the various safety devices of the appliance, but stated that the dishwasher would have to be taken apart to determine if such devices were working properly; it was his opinion that it was not advisable to check the safety devices upon finding the fan motor to be inoperative. It was his opinion that there was no fire danger from the heating coil because of safety devices designed to prevent overheating and because the coil is enclosed in a metal container. He emphasized that checking the coil and other parts of the machine would have been a major operation not called for by his findings.

He was asked, "Is there anything on this dishwasher that you know of that, if it heats up sufficiently, could set on fire some combustible material around the dishwasher or up against the dishwasher?" to which he replied, "Well, that is a pretty broad statement. A wire could short out and catch the insulation on fire, which would be normal in any type appliance. But as far as setting something on fire, I wouldn't be qualified to say. That machine is all porcelain and steel; there is no plastic like a lot of dishwashers have. This machine is solid steel." There was evidence that the back of the dishwasher had been removed with a possible exposure of the back wall to the heat from the appliance. Mr. Moon stated that he did not remove the back of the appliance, and it was his view that it was taken off after the fire. A fair summary of the uncontradicted testimony of Mr. Moon is that he inspected and serviced the dishwasher in the manner of a reasonably prudent serviceman under the same or similar circumstances, and that the source of the fire, whatever it may have been, was beyond his responsibility.

Mrs. Broussard did not formally reply to Petitioner's motion for summary judgment but filed an affidavit by one Don O'Dell, an assistant fire marshal of the City of Beaumont. This affiant stated one of his duties was that of inspecting fires in an effort to determine their probable origin, and that: "While working in this capacity, I had occasion to inspect the home of Mrs. Verena Broussard at 41 Seventh Street here in Beaumont after it was damaged by a fire on or about June 3, 1965. Based on the examination and inspection of the house and the damage thereto, I concluded at that time and it is my opinion now that the fire originated in the kitchen downstairs in the dishwasher, probably as a result of an exposed heating coil coming in contact with the wall for a sufficient length of time to ignite that combustible material."

Respondent describes his burden as the movant for summary judgment in terms of "negating or establishing the negative of each ground of recovery stated in Petitioner's then current petition"; and that, upon discharging this burden, "as of that moment in time Petitioner was placed under an affirmative burden or duty to come forward with either a Motion for continuance on the one hand, or a bona fide showing on the other hand, that a fact issue existed —such showing to be by deposition or affidavit evidence, in proper form, meaning such as would be admissible in Court." In essence, Respondent invokes the rule restated by us in Allen v. Western Alliance Insurance Co., 162 Tex. 572, 349 S.W.2d 590, 594 (1961):

"In an action on a motion for summary judgment, where the motion is supported by affidavits, depositions and other extrinsic evidence sufficient on their face to establish facts which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so and seek appropriate protection."

Under this announced rule, the problem may be stated in terms of whether Respondent would have been entitled to an instructed verdict—to judgment as a matter of law—had there been a conventional trial with the proofs the same as shown by the summary judgment record; in other words, were there fact issues yet to be decided under the deposition testimony of Respondent and Mrs. Broussard? Respondent says there were none in view of his uncontradicted testimony that the inspection and test which he made of Mrs. Broussard's dishwasher was that which would have been made by an ordinarily prudent repairman, which testimony is to be given conclusive effect on the question of his negligence unless some form of contradictory evidence is presented in proper form by Petitioner. Cf. Tigner v. First

Nat. Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85 (1954), where it is said that the failure of one party in a hearing upon a motion for summary judgment to discharge the burden which would rest on him at a trial on the merits is no ground for a summary judgment in favor of the other party. But in any event, Respondent purported to speak as a skilled witness—an expert in the field of servicing dishwashers—in defining the duty of inspection owed by him to Mrs. Broussard and in expressing the opinion that he did all that was required of him. It was held in Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948), and reaffirmed in Board of Firemen's Relief & Retirement F. Tr. v. Marks, 150 Tex. 433, 242 S.W.2d 181, 185 (1951), that opinion testimony is but evidentiary and is never binding upon the trier of facts; "[O]pinion testimony does not establish any material fact as a matter of law." It was commented in Luttes v. State, 159 Tex. 500, 324 S.W.2d 167, 189 (1958), that this statement means at least that the mere qualification of a witness as an expert does not cut off the fact finder from exercising considerable judgment of his own about how far his opinions are to be relied on, it being no less so where the expert is an employee of the party for whom he testifies. In Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332 (1936), it was concluded:

"From the authorities above discussed and quoted, we conclude that juries in weighing opinion testimony and reaching their verdicts, when all or most of the evidence on the particular issue is of such character, may, and, as Justice Field said, must to act intelligently, give effect to the testimony by applying to it, and considering it in the light of, their own general knowledge and experience in the subject of inquiry."

See also Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64 (1945), where, in another context, the right of jurors to weigh, and argue against, opinion testimony not comporting with their ideas of sound logic, was recognized.

An apparent exception to the foregoing was recognized in Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945 (1944). It was there stated that the opinion testimony of experts is not conclusive on the trier of facts unless the subject is one for experts or skilled witnesses alone where the jury or the court cannot properly be assumed to have, or be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry. Such is clearly not the situation here.

Moreover, Respondent was an interested witness whose testimony as such does no more than raise an issue of fact unless it is clear, direct and positive with no doubts cast thereon by other evidence. Great American Reserve Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.Sup.1965); Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908 (1942). It cannot be said that Respondent's testimony establishes the absence of negligence on his part as a matter of law under the circumstances to which both he and Mrs. Broussard testified. Cf. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508 (1947). At the most, the testimony of Respondent is to be weighed by the trier of facts in the light of all the evidence and surrounding circumstances, and the inferences to be drawn therefrom.

The judgments below are reversed and the cause is remanded to the district court for trial.