**E. Raymond JENSEN, Appellant,**

v.

**Paul H. KISRO, Appellee.**

**No. 16827.**

Court of Civil Appeals of Texas,
Houston (First Dist.).

Feb. 10, 1977.

Bernard & Bernard, D. R. Bernard, Houston, for appellant.

Felton, Hooker & Giddens, Dale W. Felton, Houston, for appellee.

PEDEN, Justice.

Paul H. Kisro is the residual legatee of the estate of Mrs. Ella K. Jensen, deceased. He sued E. Raymond Jensen for the value of 300 shares of bank stock owned by Mrs. Ella Jensen and sold by defendant Mr. Jensen on October 21, 1970 in reliance on a power of attorney. Raymond Jensen appeals from a summary judgment holding "that the power of attorney dated January 20, 1964 executed by Ella K. Jensen naming E. Raymond Jensen as her attorney in fact terminated on or before October 21, 1970, due to disability of the principal, Ella K. Jensen; that the acts done by E. Raymond Jensen pursuant to that power of attorney on October 21, 1970, were done without legal authority."

The appellant's only point of error is "the trial court erred in holding that appellant's power of attorney terminated by operation of law as a result of a serious illness suffered by the grantor." We sustain this point.

The instrument in question is a general power of attorney not coupled with an interest. It was revocable at will. *Hemphill v. Junious,* 372 S.W.2d 580 (Tex.Civ.App. 1963, no writ). It did not contain the provision suggested in Section 36A of the Texas Probate Code "this power of attorney shall

not terminate on disability of the principal." It authorized Mr. Jensen ". . . to do any and every act and exercise any and every power that I might or could do or exercise through any other person . ."

In response to requests for admissions the appellant admitted

1. That Ella K. Jensen was admitted to Pasadena Bayshore Hospital at approximately 4:55 A.M. on October 21, 1970.
14. That he sold 300 shares of First Pasadena State Bank stock belonging to Ella K. Jensen on October 21, 1970.
15. That Ella K. Jensen was disabled on October 21, 1970.
16. That she was very, very sick on that day.

We review the deposition testimony of Dr. R. C. Davis, Mrs. Ella K. Jensen's family physician. He said Mrs. Jensen, age 80, had been in a nursing home but when readmitted to the hospital at 4:55 A.M. on October 21, 1970, "she was very sick. Toxic. Confused." She had an intestinal obstruction and was unable to communicate for at least a couple of days. In his medical opinion she was totally incapacitated on October 21, 1970. Her failure to communicate was a result of her acute illness with an intestinal obstruction, not her mental condition. He saw her every day. After a few days she became communicative to some degree, and this continued until a few days before her death in February (some four months later). The hospital record of Dr. Davis's physical examination of Mrs. Jensen when she was admitted on October 21, 1970, states in part "The patient is an elderly woman who is not able to communicate, who only stares at the ceiling and offers no communication whatsoever."

■ The appellee had the burden of establishing that there was no genuine issue as to any material fact and that he was entitled to judgment as a matter of law. *Gibbs v. General Motors,* 450 S.W.2d 827 (Tex.1970).

"An agency is ordinarily terminated as a matter of law by the insanity of the principal . . . Since the principal is said at all times to have a right of supervision over the agency, his insanity or mental incapacity before performance by the agent of his duties ordinarily terminates the agency as a matter of law. The lunacy or mental incapacity of the principal will have this effect whether or not he has in fact been adjudged insane, but, where not formally established, it would seem that the fact of lunacy must be clear and notorious and of such a nature as affects the principal's exercise of his will . . ." 2A C.J.S. Agency § 141 a, p. 761 (1972).

We find no Texas cases on the effect of the principal's temporary mental incapacity (not formally established) on the authority of his agent during such incapacity. The Restatement of Agency 2d (1958) provides in Section 122(1): "Except as stated in the caveat, the loss of capacity by the principal has the same effect upon the authority of the agent during the period of incapacity as has the principal's death." The caveat is: "The Institute expresses no opinion as to the effect of the principal's temporary incapacity due to a mental disease."

In a "Comment on Caveat" it is explained: "d. Where incapacity is created by marriage, by becoming an alien enemy, by losing citizenship or by conviction of a crime, the incapacity operates from the moment it is created until the condition ends. So, too, a declaration by a court having jurisdiction that the principal is insane or otherwise incompetent to act in his own affairs terminates or suspends the authority of his agent. On the other hand, the agent of one who becomes mentally incompetent to act on his own account or to appoint an agent, does not necessarily lose authority to act for the principal. Very brief periods of insanity caused by the temporary mental or physical illness of the principal do not destroy the power of a previously appointed agent to act in his behalf. Further, the mental disease causing insanity has no definite boundary at which a person loses capacity. Thus, one may have capacity to make a will without having capacity to

conduct an intricate business transaction. Even where there is a pronounced mental incompetency, there may be ratification of previously executed transactions during lucid intervals. The matter is too amorphous for a statement of a definite rule."

 In our case the proof is insufficient for the movant to be entitled to summary judgment. Although he has established as a matter of law the facts conceded in appellant's admissions 1, 14, 15, and 16, the meaning of the word "disabled," as used in the 15th admission, is not clear. It is often applied in the law to physical as well as mental incapacity. Clearly, an agent's authority would not be suspended under the common law simply because, for example, the principal's hands were so injured that he could not endorse the stock certificate. Standing alone or coupled with the admission that Mrs. Jensen was very, very sick, the admission that she was disabled cannot be held to establish that on October 21, 1970 she lacked the mental capacity to sell the stock.

As to the appellee's remaining summary judgment evidence, the deposition testimony of Dr. Davis that Mrs. Jensen was confused, that in his medical opinion she was totally incapacitated, and that she was not able to communicate, does not establish as a matter of law that Mrs. Jensen lacked the mental capacity to carry out a sale of the stock.

 Generally, opinion testimony does not establish any material fact as a matter of law unless the subject is one for experts or skilled witnesses alone where the jury or the court cannot properly be assumed to have, or to be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry. *Broussard v. Moon,* 431 S.W.2d 534 (Tex. 1968).

The related but not identical subject of the admissibility of evidence of mental capacity to make a will was considered by the Texas Supreme Court in *Chambers v. Winn,* 137 Tex. 444, 154 S.W.2d 454 (1941). ". .

witnesses, *whether experts or laymen,* may, having first stated their observation of the habits, conduct, expressions, peculiarities, disposition, temper, or character of the person, in turn may give their opinion as to whether he was mentally capable of knowing or understanding the nature and effect of his acts . . ." (emphasis added).

The summary judgment against E. Raymond Jensen is reversed and remanded. His wife, also a defendant, did not appeal.