**In the Interest of G. M. et al., Children.**

**No. 8974.**

Court of Civil Appeals of Texas, Amarillo.

March 26, 1979.

Rehearing Denied April 23, 1979.

Marvin Rogers, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Lubbock, Bonner Smith, Asst. Dist. Atty., for appellee.

DODSON, Justice.

The Texas State Department of Public Welfare instituted this action under § 15.02 of the Texas Family Code [1] to terminate the parent-child relationship between Respondent [2] and her two natural children, G. M. and B. G. C.[3] The Department alleged that Respondent knowingly placed or knowingly allowed G. M. and B. G. C. to remain in conditions or surroundings which endangered their physical and emotional well-being and that termination is in their best interest. Trial was before the court, who entered its judgment terminating the parent-child relationship and appointing Lubbock County Children's Protective Service as the managing conservator. Respondent appeals from this judgment. Affirmed.

The natural right which exists between parents and their children is one of constitutional dimensions. The termination of this right is complete, final and irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit. For these reasons, the proceedings below must be strictly scrutinized. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex.1976); *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976).

We first address the points of error which attack the legal and factual sufficiency of the evidence to support the court's finding that Respondent knowingly allowed the children to remain in surroundings which endangered their physical and emotional well-being. In this regard, the Department sought to prove that: G. M. was sexually abused by her stepfather and his brother for approximately a year and a half to two years; Respondent knew of these incidents; Respondent allowed the children to remain in these surroundings during this time period. Respondent denies having any knowledge of these incidents of sexual abuse until October 1977, at which time she filed for a divorce and voluntarily discussed the alleged abuse with the Department, the police, the district attorney's office, and the grand jury. A review of the evidence follows.

G. M., a six year old girl, testified in the language of a child that she was forced to have sexual intercourse with her stepfather in Kansas City and on subsequent occasions in Texas. She further testified that her mother knew of the incident in Kansas City (approximately a year and a half prior to October 1977 reporting of incidents) and had placed her in cold water in an attempt to stop her vaginal bleeding. G. M. testified that on another occasion her stepfather's brother made her put her hand in his pants and he in turn did the same to her. Respondent, upon discovering this abuse in progress, stopped the incident.

Mrs. Wilma Manning, a case worker for Protective Services, testified that Respondent admitted that she had knowledge of the sexual abuse inflicted upon her daughter. Mrs. Manning also testified that B. G. C., a two and a half year old girl, was in the same room when G. M. was sexually abused.

1. The statute provides, in part, that:

   A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

   1) the parent has:

   * * * * * *

   (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; . . . and in addition, the court further finds that 2) termination is in the best interest of the child.

   Tex.Fam.Code Ann. § 15.02 (Vernon Supp. 1978–1979).

2. The natural mother of the children, G. M. and B. G. C., is referred to as the Respondent to protect the identity of the children.

3. The Department also sought and obtained the termination of the parent-child relationship between B. G. C. and her natural father and between G. M. and her natural father, who is unknown. Neither of these parents is involved in this appeal.

Mrs. Michael Zahn, a social worker with Protective Services, testified that Respondent told her of an incident which occurred prior to her husband's visit to the hospital in which she discovered G. M. undressed on a bed with her husband, who had his penis exposed. Following her husband's return from the hospital, Respondent went to a liquor store at his request, only to return and discover that he had had intercourse with G. M. again. This discovery occurred approximately three weeks prior to Respondent's visit to the Department.

Respondent testified:

Q. Did [G. M.] ever tell you about having sex with your husband and you didn't do anything about it because you were scared?

A. Yeah, because I told her that I would see about stopping it, that we would talk to a judge or something or another but I didn't know where to go.

* * * * * *

Q. Okay, did [G. M.] tell you more than one time that [your husband] was having sex with her?

A. Yes, I asked about it a couple or so times, yes.

* * * * * *

Q. [H]ave you ever made a statement to anyone in which you said in referring to this situation that at least [your husband] used Vasoline? Do you remember saying that?

A. Sometime or another, because I asked [G. M.] that. Now, who—I don't know who I said it to but [G. M.] told me because I asked her if he just—without anything or if he used something.

We conclude, after our review of the entire record, that the finding that Respondent knowingly allowed G. M. and B. G. C. to remain in surroundings which endangered their physical and emotional well-being is supported by probative evidence. Furthermore, the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, the legal and factual sufficiency points attacking this issue are overruled.

Respondent also challenges the legal and factual sufficiency of the evidence to support the determination that the termination of the parent-child relationship is in the best interest of the children. This evidentiary review is guided by, but not necessarily limited to, the following factors: the desires of the children; the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the children; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Holley v. Adams, supra,* at 371–72.

On October 31, 1977, G. M. and B. G. C. were placed in the Emergency Shelter for Children in Lubbock. They were given a medical and psychiatric examination. G. M. related in the psychiatric examination that she desired to return home to her mother. The examining physician indicated that G. M. had apparently been favored over her two and a half year old sister and that this may contribute to her large interest in being with her mother. He further stated that "[i]t is not unusual for neglected and or abused children to want to return to the abusing home because the parent or parents are seen as being the only significant person the child has had to relate to and depend upon for shelter and support, even though this may have been grossly inadequate."

G. B. C.'s psychiatric examination, as well as testimony from other witnesses, showed that she was depressed and developmentally delayed and had very little ability to verbalize. Her problems were diagnosed as: "Depressive relation of childhood related to probable emotional deprivation with below normal intellectual functioning." The examining doctor recommended that a speech and hearing evaluation be given, that she

be enrolled in a therapeutic nursery, and that "[b]ecause of the apparent emotional deprivation the child has experienced in her parent's home and her apparent lack of emotional investment in her mother, permanent placement outside the home be considered. . . ."

Mrs. Wilma Manning testified that her Department has continued working with the children for their adjustment in foster care and that she would recommend that the siblings stay together upon adoption. She further stated that in her opinion B. G. C. suffered from emotional neglect. She expressed concern about Respondent possibly taking the children to her parents' home because her brother had a record of sexually molesting young children. In this regard, she related seeing Respondent's brother kiss G. M. goodbye one day at the office by placing his tongue in her mouth. Mrs. Manning stated that her recommendation of termination was based on what she believed to be in the best interest of the children.

We do not consider it necessary to restate that evidence which is set forth in our consideration of the first points of error. We note, however, that the evidence regarding the sexual abuse is a significant factor in determining whether termination is in the best interest of the children.

In conclusion, we have reviewed the entire record and determined that there is probative evidence to support the finding that termination of the parent-child relationship is in the best interest of the children. Furthermore, this finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Respondent's legal and factual sufficiency points attacking the best interest determination are overruled.

Respondent next contends that the trial court erred in terminating the parent-child relationship based on a preponderance of the evidence rather than clear and convincing evidence. We have recently addressed this contention in *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.). We reiterate our position in *Woodard* that the proper standard is by a preponderance of the evidence. Respondent's point of error is overruled.

In the final points of error Respondent maintains that she has a fundamental right under the United States Constitution to a natural parent-child relationship with her children and that the trial court erred in terminating this parent-child relationship because a less onerous and less restrictive alternative exists. She says the less onerous and less restrictive alternative is to allow her to participate in a six month rehabilitation program which was recommended by the examining psychologist[4] rather than terminate the parent-child relationship.

In support of her position, Respondent relies on *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *O'Conner v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). These cases are not controlling or persuasive on the matters before this court. These cases deal with constitutional challenges directed at certain legislative enactments which attempt to regulate and impose restrictions on individual and constitutionally protected liberties. The constitutional validity of the underlying termination legislation is not before us. We also do

4. The psychologist's report provided, in part, that:

> It is this examiner's opinion that [Respondent] be offered individual and/or group counseling for a period of three months while her children continue to be in foster care. Following this another three month period of therapy should be completed while she has the children in care so that satisfactory mothering patterns can be instituted. At that point in time a new court hearing should be held to determine the future placement of the children.

not construe these cases to require the trial court to indulge a six month counseling experiment before it can terminate the parent-child relationship. We further point out that the rehabilitation recommendation is opinion testimony which is merely a part of the entire evidence and by itself is not binding on the court. *Broussard v. Moon*, 431 S.W.2d 534, 537 (Tex.1968).

We have strictly scrutinized the whole record in this case and conclude that the trial court properly exercised its discretion in terminating the parent-child relationship under the circumstances of this case. Respondent's points of error are overruled. Accordingly, the judgment of the trial court is affirmed.