**UNITED STATES of America, Plaintiff,**

v.

**Will PRICE, Jr., et al., Defendants.**

**Civ. No. 80–73–A.**

United States District Court,
S. D. Iowa, C. D.

May 15, 1981.

---

Roxanne Barton Conlin, U. S. Atty., S. D. Iowa; Christopher Hagen, Asst. U. S. Atty., Des Moines, Iowa, Thomas R. Jones, Atty. Tax Division, Washington, D. C., for plaintiff.

Robert E. Mannheimer, Richard A. Malm, and Craig F. Graziano of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, Iowa, for defendants.

## RULING AND ORDER

STUART, Chief Judge.

This action was initiated by the United States to recover from the executors of the Estate of Marie Price Reel the full amount of an assessment for unpaid estate taxes. The executors tendered "flower bonds"[1] which, if accepted at par value as required by the terms, would have satisfied the tax obligation. The United States refused to accept the bonds claiming the conditions for acceptance at par were not met because the decedent did not own the bonds at her death. The claim of non-ownership is based upon the fact that the bonds were purchased by her agent with her funds for her benefit while she was comatose. The government contends the agency terminated when she become incapacitated.

## FINDINGS OF FACT

In March of 1976, the decedent was on vacation in Florida at which time she had a discussion with her brother, Will Price, Jr., and her nephew, Price Normile, regarding the purchase of flower bonds. At that time, the decedent orally authorized Price Normile to purchase with her funds flower bonds on her behalf to be surrendered on her death in payment of estate taxes. The record further indicates that the decedent had additional discussions with Mr. Price and Mr. Normile regarding the purchase of such bonds in which she reaffirmed her oral authorization for their purchase. No written power of attorney authorizing purchase of the bonds was executed by the decedent.

On April 24, 1976, before any bonds had been purchased, the decedent suffered a massive stroke which resulted in a coma and ultimately her death on May 4, 1976. Price Normile, knowing of decedent's comatose condition, used her funds to purchase flower bonds in the total face value of $225,000 on her behalf. The flower bonds were issued under the following condition:

> This bond, upon the death of the owner, will be redeemed at the option of the duly constituted representatives of the deceased owner's estate at par and accrued interest if it constitutes part of such estate, and the proceeds are to be applied to the payment of federal estate taxes.

After decedent's death, the flower bonds were included in the estate and the plaintiffs as executors of decedent's estate tendered the bonds to the Bureau of Public Debt seeking redemption in payment of estate taxes due. The defendants refused to accept the bonds on the ground that such bonds were not owned by decedent at the time of her death.

1. "Flower Bonds are so called because of the manner in which they 'bloom' at the death of their owner. *Estate of Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978). That is, the bonds, which sell at a substantial discount, may be redeemed at par in payment of estate taxes so long as the conditions promulgated by the Treasury Department are met. The disparity between the market value and face value of the bonds is due to the low interest rate which they yield. Yet it makes them an extremely attractive investment in anticipation of federal estate taxes.

"The government no longer issues Flower Bonds; however, a number of earlier issues, such as the one in question at bar, are still available on the open market."
*United States of America v. Manny*, 463 F.Supp. 444, 445 (S.D.N.Y.1978).

## CONCLUSIONS OF LAW

The Court must determine if under the law of the State of Iowa the decedent, at the time of her death, owned the flower bonds purchased on her behalf with her funds on her oral authorization even though the purchases were made while the decedent lay in a comatose condition.

The government argues that the decedent was permanently incapacitated by the stroke and the agency created by the oral authorization was terminated and therefore Price Normile's purchase of the flower bonds did not make the decedent owner of the bonds at her death. Defendant executors argue, however, that the decedent was only temporarily incapacitated, that the agent's acts taken thereafter were voidable and not void, and as there was no disaffirmance, the transaction was valid making her the owner of the flower bonds at her death.

■■■ The death or permanent incapacity of the principal terminates the agency relationship under Iowa law. See *Ferguson v. Pilling*, 231 Iowa 530, 1 N.W.2d 662, 663 (1942); *Levitt v. New York Life Ins. Co.*, 230 Iowa 456, 297 N.W. 888, 892 (1941). This rule is consistent with the general position taken by the drafters of Restatement of the Law, Second, on Agency:

> Except as stated in the caveat, the loss of capacity by the principal has the same effect upon the authority of the agent during the period of incapacity as has the principal's death.

Restatement (Second) of Agency, § 122 (1958). This Court believes, however, that a temporary as opposed to permanent incapacity does not terminate the agency relationship which is also consistent with language found in the Restatement. In the caveat, the Institute chose to express "no opinion as to the effect of the principal's temporary incapacity due to a mental disease." *Id.* at Caveat. The drafter of the comment to the caveat, however, explains that temporary mental or physical illness resulting in brief periods of insanity does not terminate an agent's power. *Id.* at comment to Caveat.

■■■ The Court is of the opinion the government has failed to show that decedent's comatose condition in this case must be characterized as permanent incapacity.[2] The only medical evidence in the record supports this conclusion. In his affidavit, Dr. Donald Schissel, the decedent's treating physician, states that it is impossible to say "with certainty whether a patient will recover" from a coma resulting from a stroke. Even though Dr. Schissel did not think the decedent would recover from her massive stroke, he concluded that "recovery was possible until she died".

This finding is also consistent with conclusions reached by other courts faced with similar circumstances. The Second Circuit recently reviewed two lower court decisions involving flower bonds and held that the comatose conditions of decedents were temporary and not permanent incapacities since they could have recovered from the conditions. *United States v. Manny*, 645 F.2d 163 at 168 (2d Cir. 1981). The court commented that the "Restatement provisions are best construed as depriving agents of capacity only where the incapacity of their principals is known to be permanent from the outset". *Id.* For other supportive cases, see *Estate of Pfohl v. Commissioner*, 70 T.C. 630 (1978); *Estate of Watson v. Simon*, 442 F.Supp. 1000 (S.D.N.Y.1977), rev'd on other grounds, *Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978).

■■■ The acts of decedent's agent during the period of her incapacity were not

---

2. This is an action for the recovery of estate taxes and the government has borne its initial burden to establish defendants' estate tax liability. The defendants, however, have asserted an affirmative defense to the government's claim based upon the tender of the flower bonds in satisfaction of the estate taxes. Since the defendants have shown that the bonds were in fact tendered and on their face and the face of the Bonds Treasury Department Form PD 1782 appear eligible for redemption, the Court is of the opinion that the government bears the burden of going forward with evidence to show why it was justified in refusing to redeem the bonds in payment of the estate taxes. See generally *U. S. v. Manny*, 645 F.2d 163 (2d Cir. 1981).

void, but only voidable. Such treatment is consistent with the general rule that the acts of incompetents, such as the executon of contracts, are voidable and not void. See *In re Gensicke's Estate*, Iowa, 237 N.W. 333, 336 (1931); *Dean v. Estate of Atwood*, 221 Iowa 1388, 212 N.W. 371, 373 (1927); *Reeves v. Hunter*, 185 Iowa 958, 171 N.W. 567, 569 (1919). See 17 C.J.S. Contracts § 133(3) at 864. Because Price Normile's acts in purchasing the flower bonds on decedent's behalf were voidable, the acts are enforceable unless disaffirmed. The plain meaning of the term "voidable" is that there has been a valid act which may be avoided as opposed to an invalid act that may be ratified. 92 C.J.S. Void and Voidable at 1023. As in the circumstance of a contract executed by an incompetent person, a voidable contract is valid until disaffirmed. *In Re Gensicke's Estate*, 237 N.W. at 336; 17 C.J.S. Contracts § 133(3) at 864. Therefore, the decedent owned legal title to the flower bonds in question upon their purchase by her nephew with the right to disaffirm if she recovered from her coma. The decedent did not so disaffirm, and her executors have taken acts representing rati-

fication by tendering the bonds for payment of estate taxes. The Court believes that this approach is particularly appropriate in this case where the principal's agent during the principal's incompetency took only those acts which the record firmly establishes the principal authorized. In addition, other courts for purposes of determining ownership of flower bonds have treated the acts of agents of comatose principals as voidable and effective unless disaffirmed by the principal when ratified by representatives of the estate. *U. S. v. Manny*, 645 F.2d 163 at 169 (2d Cir. 1981); *U. S. v. Stanley*, 645 F.2d 163 at 169 (2d Cir. 1981); *Estate of Pfohl v. Commissioner*, 70 T.C. 630 (1978); *Estate of Watson v. Simon*, 442 F.Supp. 1000, 1002–03 (S.D.N.Y.1977). *Contra U. S. v. Estate of Dean*, No. 79–482–C (S.D.Ind., May 21, 1980).

. The Court recognizes plaintiff's contention that the enactment of Iowa Code Sections 633.705 and .706 evinces a legislative intent to protect incompetents and that the spirit of these provisions voids the acts of Mr. Normile taken after the decedent became comatose.[3] These statutes, as plaintiff indicates in its supplemental memorandum, were designed to extend the effective-

---

**3.** 633.705 When power of attorney not affected by disability.

Whenever a principal designates another as attorney in fact or agent by a power of attorney in writing and the writing contains the words 'This power of attorney shall not be affected by disability of the principal', or 'This power of attorney shall become effective upon the disability of the principal', or similar words showing the intent of the principal that the authority conferred shall be exercisable notwithstanding his disability, the authority of the attorney in fact or agent is exercisable by him as provided in the power on behalf of the principal notwithstanding later disability or incapacity of the principal or later uncertainty as to whether the principal is dead or alive. All acts done by the attorney in fact or agent pursuant to the power during any period of disability or incompetence or uncertainty as to whether the principal is dead or alive have the same effect and inure to the benefit of and bind the principal and his heirs, devisees and personal representatives as if the principal were alive, competent and not disabled. If a conservator thereafter is appointed for the principal, the attorney in fact or agent, during the continuance of the appointment, shall account to the

conservator rather than the principal, and the conservator shall have the power to revoke the power of attorney on behalf of the principal.

633.706 Other powers of attorney not revoked until notice of death or disability.

1. The death, disability, or incompetence of any principal who has executed a power of attorney in writing other than a power as described by section 633.705 does not revoke or terminate the agency as to the attorney in fact, agent or other person who, without actual knowledge of the death, disability, or incompetence of the principal, acts in good faith under the power of attorney or agency. Any action so taken, unless otherwise invalid or unenforceable, binds the principal and his heirs, devisees, and personal representatives.

2. An affidavit, executed by the attorney in fact or agent stating that he did not have, at the time of doing an act pursuant to the power of attorney, actual knowledge of the revocation or termination of the power of attorney, by death, disability or incompetence, is, in the absence of fraud, conclusive proof of the nonrevocation or nontermination of the power at that time. If the exercise of the power requires execution and delivery of

ness of powers of attorney and agency relationships to avoid the rule in Iowa that death or incompetence of the principal terminates the authority of the agent. The Court has already found, however, that the facts of this case do not fall within the above rule since the decedent's condition was not shown to be a permanent incapacity. The Court is not convinced that sections 633.705 and .706 are applicable to situations of temporary incapacity of the principal.

IT IS THEREFORE ORDERED that the flower bonds in question are eligible for redemption at par and accrued interest for the application of the proceeds thereof to the federal estate tax due on decedent's estate.

IT IS FURTHER ORDERED that the Clerk is directed to enter judgment in defendants' favor.

---

any instrument which is recordable, the affidavit when properly acknowledged is likewise recordable.

3. This section shall not be construed to alter or affect any provision for revocation or termination contained in the power of attorney.