Remarize D. CAMPBELL, Independent Executrix of the Estate of Lionel L. Campbell, Deceased

v.

The UNITED STATES.

No. 560–79T.

United States Court of Claims.

Aug. 19, 1981.

Walter P. Zivley, Houston, Tex., attorney of record, for plaintiff; Liddell, Sapp, Zivley, Brown & LaBoon, Houston, Tex., of counsel.

James S. Maxwell, Washington D. C., with whom was Acting Asst. Atty. Gen., John F. Murray, Washington, D. C., for defendant; Theodore D. Peyser and Donald H. Olson, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and KUNZIG, Judges.

OPINION

FRIEDMAN, Chief Judge:

This is another chapter in the continuing saga of attempts by the Internal Revenue Service to limit the use of "flower bonds" to pay federal estate taxes. Flower bonds are United States Treasury bonds (1) that were issued a number of years ago at interest rates substantially below current ones and therefore sell significantly below par, but (2) that may be redeemed at par before maturity to pay federal estate taxes. *See*

*generally Girard Trust Bank v. United States*, 221 Ct.Cl. 134, 136–37 n.1, 602 F.2d 938, 940 n.1 (1979).

In the present case, as in a number of others, the bonds were purchased for the decedent soon after he became comatose and shortly before he died, pursuant to a power of attorney executed several years earlier. The government contends that the power of attorney lapsed when the decedent became comatose, that the purchase of the bonds on his behalf was ineffective, and that the decedent therefore was not the "owner" of the bonds when he died which, under the governing regulation, is a condition to the early redemption of the flower bonds at par to pay estate taxes. We reject this contention and hold that the decedent's estate was entitled to have the flower bonds redeemed at par for the payment of estate taxes.

## I.

The pertinent facts, which are stipulated, are as follows:

In 1965, the decedent, Lionel L. Campbell ("Campbell"), while in good health, gave his son ("Campbell Junior") "a full and universal power of attorney" authorizing Campbell Junior "to do any and every act, and exercise any and every power" that Campbell could do or exercise through any other person. On December 9, 1976, Campbell, then 73 years old, was "stricken with a cerebral hemorrhage, and became permanently and irreversibly mentally incompetent, remaining so until his death." He died 24 days later on January 2, 1977.

On December 10, the day after Campbell was stricken, Campbell Junior purchased, at a substantial discount and with Campbell's funds, a United States Treasury bond, in the face amount of $200,000, bearing interest at 3½ percent per annum, and maturing on November 15, 1998. In purchasing the bond, Campbell Junior intended to act as agent and attorney for his father, although he was fully aware of his father's medical condition.

The plaintiff, the executrix of Campbell's estate, filed with the appropriate Federal Reserve Bank an application to redeem at par the portion of the flower bond that was required to satisfy Campbell's federal estate tax liability. The Internal Revenue Service subsequently determined that that liability was $103,219. The United States, acting through the Commissioner of the Bureau of Public Debt, refused to redeem at par any portion of the bond. The Bureau holds $106,000 face amount of the bond, pending our final determination whether "an appropriate part of the subject bond was eligible for early redemption in satisfaction of decedent's estate tax liability." The plaintiff states that as of December 7, 1979, the approximate market value of the $106,000 face amount of the bond was $81,885.

The present suit seeks damages of approximately $35,000. This represents (1) the difference between the par and market value of the $106,000 face amount of the bond, plus (2) the difference in interest between the 3½ percent the bond earns and the statutory interest upon unpaid federal estate taxes, and (3) $5,000 in administrative costs the estate allegedly incurred because of the government's refusal to redeem the bond at par. The United States has filed a counterclaim for $103,219, the amount of the allegedly unpaid estate tax. Plaintiff does not dispute the amount of the assessment, but contends that the balance of the estate tax remains unpaid because the government refuses to redeem the flower bond.

## II.

The Treasury regulation dealing with the early redemption of this flower bond provides:

Any bonds issued hereunder which upon the death of the owner constitute part of his estate, will be redeemed at the option of the duly constituted representatives of the deceased owner's estate, at par and accrued interest to date of payment, *provided*:

(a) that the bonds were actually owned by the decedent at the time of his death; and

(b) that the Secretary of the Treasury be authorized to apply the entire proceeds of redemption to the payment of Federal estate taxes.

Treasury Circular No. 1067 (Sept. 11, 1961) (emphasis in original).

The only question before us is whether the bonds were actually owned by Campbell at his death. The government contends that when Campbell became "permanently and irreversibly mentally incompetent" following his stroke, the effect was to terminate Campbell Junior's "authority to act on decedent's behalf in effecting a bond purchase." Under the government's theory, therefore, Campbell Junior's purchase of the bond for his father was ineffective.

A. A preliminary question is whether state or federal law determines whether Campbell Junior's power of attorney terminated when his father became comatose. Plaintiff urges that state law governs; the government invokes federal law. We conclude that we should look to Texas law to decide the question.

■ Campbell, a Texas resident, executed the power of attorney in Texas. The power was created pursuant to Texas law and Texas law defined the scope of the power and the rights and obligations of the parties thereunder. Similarly, Texas law governs the duration and termination of the power. Since Texas law created and defined the power, that law also should determine the effect of the incapacity of the donor upon the continued existence and exercise of the power.

The governing flower bond regulation requires only that "the bonds were actually owned by the decedent at the time of his death." There is nothing in this regulation that implies or even suggests that federal rather than state law is to determine the question of agency law—a subject traditionally committed to state law—whether the incapacity of the decedent terminated the power of appointment. *See United States v. Manny,* 645 F.2d 163 (2d Cir. 1981); *United States v. Price,* 514 F.Supp. 477 (S.D.Iowa 1981); *United States v. Estate of Dean,* 80–2 U.S.T.C. ¶ 13,358 (S.D.

Ind.1980). Indeed, the federal regulation does not address that issue.

■ B. Although there is no Texas authority dealing with this specific question, Texas law indicates that Texas courts would hold that when Campbell became comatose, the power of attorney did not immediately terminate but rather continued effective for some brief period, subject to disaffirmance by Campbell's executrix after his death. This is also the view of most of the federal courts that have considered the question under the laws of other states.

It is settled in Texas that when a principal is adjudicated insane, the authority of his agent to act for him is terminated. "On the other hand, the principal's intoxication does not necessarily terminate an agency." 3 Tex.Jur.3d *Agency* § 24 (1980). *See also Renfro v. City of Waco,* 33 S.W. 766 (Tex. Civ.App.1896) (adjudicated insanity); *Mullins v. McDowell,* 142 S.W.2d 699 (Tex.Civ. App.1940) (intoxication). In *Jensen v. Kisro,* 547 S.W.2d 65, 66 (Tex.Civ.App.1977), the court refused to hold that a power of attorney, pursuant to which the decedent's stock had been sold shortly after she entered a hospital in a "disabled" condition and while she was "very, very sick" had been terminated, since these two circumstances "cannot be held to establish that on [the date of the conveyance] she lacked the mental capacity to sell the stock." *Id.* 67.

The government relies heavily upon the Restatement (Second) of Agency. Section 122(1) of the Restatement states:

> Except as stated in the caveat, the loss of capacity by the principal has the same effect upon the authority of the agent during the period of incapacity as has the principal's death.

The caveat states that "[t]he Institute expresses no opinion as to the effect of the principal's temporary incapacity due to a mental disease." The comments add little to defining temporary incapacity:

> [T]he agent of one who becomes mentally incompetent to act on his own account or to appoint an agent does not necessarily lose authority to act for the principal.

Very brief periods of insanity caused by temporary mental or physical illness of the principal do not destroy the power of a previously appointed agent to act in his behalf. . . . The matter is too amorphous for a statement of a definite rule.

Comment on Caveat.

In refusing to accept the Restatement as a basis for holding in a flower bond case that under New York law a power of attorney was terminated when the decedent became comatose shortly before the bonds were purchased, the Second Circuit pointed out in *Manny, supra*:

> The difficulty with the Restatement analysis is that at the time of acting the agent cannot tell whether the incapacity will be temporary or permanent. Even in these [two] cases [consolidated on appeal], decedents could have recovered from their comatose conditions and survived. We are persuaded that the Restatement provisions are best construed as depriving agents of capacity only where the incapacity of their principals is known to be permanent from the outset; mental or physical incapacity which does not preclude recovery should render the interim acts of the agent voidable rather than void. This reading is wholly consistent with the weight of New York cases in point and preserves the salutary principle that those temporarily unable to act for themselves should be able to benefit from favorable acts which their agents take during their incapacity.

645 F.2d at 168. *See also Price, supra.*

In *Manny*, which involved two consolidated cases similar to the present case, the court held that in both cases the disability resulting from the decedent's comatose state rendered the purchase of flower bonds voidable and not void and that since the executors had not rejected the purchase by the agent, the decedent was the owner of the bonds when he died. In one of the cases the bonds were purchased 10 days after the decedent lapsed into a coma; he died 8 days after the purchase. In the other case the bonds were purchased 5 days after a stroke rendered the decedent semi-

comatose, disoriented, and confused; he died 3 days after the purchase. Those two cases are strikingly similar to the present case, in which the bonds were purchased the day after Campbell became comatose, and Campbell died 24 days after the purchase.

We agree with the reasoning of *Manny* and follow it. Although *Manny* dealt with New York rather than Texas law, there is no reason to think that the two states would reach different conclusions on this issue. *See also* the following cases likewise holding that the comatose state of the decedent rendered the purchase of flower bonds soon after he lapsed into that state and shortly before he died only voidable and not void. *Price, supra; Silver v. Blumenthal,* No. 79 C 2013 (N.D.Ill. Sept. 18, 1980); *United States v. Estate of Glenny,* 78–2 U.S.T.C. ¶ 13,259 (W.D.N.Y.1978); *Estate of Watson v. Simon,* 442 F.Supp. 1000 (S.D.N.Y.1977), *rev'd on juris. grounds sub nom. Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir. 1978); *Pfohl v. Commissioner,* 70 T.C. 630 (1978). *But cf. Dean, supra,* where the district court held that under Indiana law an agent's authority does not continue during the time that the principal is mentally or physically incapacitated.

The government stresses the stipulation in the present case that when Campbell suffered his stroke and became comatose, he "became permanently and irreversibly mentally incompetent, remaining so until his death." When Campbell suffered his stroke, however, his son could not then have been certain that his father's incapacity was permanent. Here, as was the case when the bonds were purchased in *Manny*, Campbell Junior, when he purchased the bond one day after his father's stroke, could not know whether incapacity would be permanent or only temporary.

■ The government points to a Texas statute providing that a power of attorney does not terminate upon the "disability or incompetence of the principal" if the power "contains the words 'this power of attorney shall not terminate on disability of the principal' or similar words showing the intent of the principal that the power shall not termi-

nate on his disability." Tex.Prob.Code Ann. art. 36A (Vernon) (1980). The inference the government draws from this provision, however—that without such words the power terminates upon disability—does not follow.

On its face the statute merely provides a method by which a principal may enable his agent to continue to act for him even after the principal has become disabled. The statute does not provide that without such language, the power immediately terminates if the principal becomes comatose. The government relies solely upon the language of the statute. Standing alone, this statute does not outweigh the arguments previously set forth that support the conclusion we have reached.

Thus, under Texas law, Campbell Junior's purchase of the bond for his father, like any other contract or conveyance executed on behalf of a person lacking mental capacity, was a voidable and not a void act. *See Gaston v. Copeland*, 335 S.W.2d 406, 408–09 (Tex.Civ.App.1960); *Neill v. Pure Oil Co.*, 101 S.W.2d 402, 404 (Tex.Civ.App.1937). *See generally* 31 Tex.Jur.2d *Insane and Incompetent Persons* § 9 (1962); 2 S. Williston, Law of Contracts § 251 (3d ed. 1959). Upon Campbell's death, only Campbell's heirs, devisees, or personal representatives could have disaffirmed the purchase. *See Bennett v. Romos*, 151 Tex. 511, 252 S.W.2d 442 (1952). *See generally* 31 Tex.Jur.2d *Insane and Incompetent Persons* § 11; S. Williston, *supra*, § 253. The government would not have the power to disaffirm the flower bond purchase.

Since Campbell's estate did not repudiate the purchase and, in fact, ratified it by submitting the bond for early redemption, the purchase remained valid and enforceable. *See Gaston, supra* at 409. Consequently, under Texas law, Campbell was the owner of the bond at his death.

In so holding, we decide only this case, in which the bond was purchased the day after the decedent became comatose and less than 4 weeks before he died. We express no opinion on whether the result would be the same if the purchase was not made until a substantial time after the decedent became comatose, during which period a guardian could have been appointed, or if the decedent survived the purchase for an extended time.

## CONCLUSION

The plaintiff is entitled to recover. Because we hold that the government is required to redeem at par the portion of the flower bond necessary to pay the estate tax, plaintiff is entitled to recover damages it suffered as a result of the government's refusal to redeem the bond. The case is remanded to the Trial Division pursuant to Rule 131(c) to determine the amount of such damages. In view of our disposition, the issue raised by the government in its counterclaim is moot and the counterclaim is dismissed.